## SNYDER *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 663.   Argued March 15, 1935.—Decided April 29, 1935.

*Mr. Henry M. Ward* for petitioner.

*Assistant Attorney General Wideman*, with whom *Solicitor General Biggs* and *Messrs. James W. Morris* and *J. P. Jackson* were on the brief, for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This case presents further questions regarding the application to marginal transactions on the stock exchange of Article 58 of Regulations No. 74, as well as some of those already considered in *Helvering* v. *Rankin*, decided this day, *ante*, p. 123.

Snyder was the salaried secretary of an insurance company. During 1928, as in previous years, he made on his individual account, at different dates and different prices,

many purchases and sales on margin of United Gas Improvement Company stock. In his Federal Income Tax return for the calendar year 1928 he reported, apparently, no profits from trading on the stock exchange. The Commissioner of Internal Revenue concluded that he had made large gains; determined that his net income was $197,495.85; and, after making the appropriate deductions, assessed a deficiency tax of $38,961.22. The large income computed by the Commissioner was the result of applying the sales made in 1928 against purchases in earlier years, in accordance with the "First-in, first-out" regulation and §§ 111–113 of the Act. The Board of Tax Appeals, 29 B. T. A. 39, and the United States Circuit Court of Appeals, 73 F. (2d) 5, affirmed the Commissioner's determination. The facts found by the Board of Tax Appeals, upon which the case was submitted, are these:

Snyder traded in United Gas Improvement Company stock for profit through brokers on margin; and increased his holdings by the method known as " pyramiding." On January 1, 1928, there stood to his credit 5,300 shares; and his debit balances aggregated $501,865.59. He purchased during the tax year 10,600 shares and sold 7,900. At the close of the year, 8,000 shares stood to his credit, and his debit balances aggregated $932,822.67. Upon rises in the market, paper profits had been used to increase his holdings. Upon declines in the market, when his margin fell below the required percentage, the brokers reduced his debit balances by sufficient sales to make up the deficiency in the margin. The purchases and sales were effected by the brokers transferring so-called " street certificates," each for 100 shares, in the name of some stock exchange concern, endorsed by it in blank. At no time was any stock certificate delivered by the brokers to Snyder, or by him to them; nor was any certificate earmarked for him or his account. The certificates were inextricably

mingled with other securities pledged with banks. They were at all times incapable of identification as having been bought or sold for the account of Snyder. The transactions between him and the brokers were reflected solely in entries in Snyder's account on the brokers' books; and no entry indicated that any particular lot theretofore purchased had been sold or retained. The only attempt at identification found by the Board, was the uncontradicted testimony of Snyder to the effect that " in each case where a sale was made it was his intention to sell the last acquired stock first and shortly thereafter to buy back an equivalent amount in order to increase his margin and acquire additional shares of the stock."

*First.* Snyder contends, in the alternative, that his intention to sell the last acquired stock first, constituted sufficient identification to make the " First-in, first-out " rule inapplicable; or else that the regulation as applied to marginal transactions on the stock exchange is invalid, because there is no possible means, other than the trader's intentions, of identifying the shares sold. What has already been said in *Helvering* v. *Rankin* is enough to dispose of both of these contentions. It is there determined that shares traded on margin are capable of identification for the purposes of the regulation; but that the mere intention of the trader to sell particular shares, without further designation, does not constitute sufficient identification.

*Second.* Snyder contends that the "First-in, first-out" regulation may not, consistently with the provisions of the Revenue Act of 1928, be applied to the facts of this case. The argument is that his market operations constituted a trade or business as those terms are used in § 22 (a) of the Act; that according to that section, and the applicable decisions of this Court, *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359; *Woolford Realty Co.* v. *Rose,* 286 U. S. 319, gross income from such business, as well as net in-

come under § 23 of the Act, must be computed entirely with respect to transactions within the taxable year; and that §§ 111–113, upon which the Government relies, are not applicable because they relate only to "sales of property, including securities, held for investment," and have no application to sales made in the course of a "business of trading on the stock exchange." On this assumption, Snyder argues that the income realized during the taxable year from his stock transactions is not the aggregate of the gains and losses on each sale of securities, measured by the difference between the sale and cost prices of the securities sold, but the profit or loss realized as a result of all market operations, purchases as well as sales, made during the taxable year. Such profit or loss, he now suggests, must be computed "by taking the difference between the purchase price and the sales price of shares bought and sold during the year, deducting expenses, such as commissions, taxes and interest." Thus computed, he concludes, his market operations resulted in a gross income of $43,692; and adding his salary, insurance commissions and dividends, and deducting the expenses of his stock operations (interest paid brokers) his net taxable income was $39,682, and his total tax $1,897.77.

*Third.* Neither in the findings of the Board of Tax Appeals, nor in the facts upon which the case was submitted to it, is there any support for the controverted allegation in Snyder's petition that his market operations constituted a " business regularly carried on for profit." [1] It is true that a taxpayer may be engaged in more than one trade or business, as those terms are used in various

---

[1] The answer of the Commissioner denied that the " brokerage accounts . . . constituted a trade or business within the meaning of any provision of the Revenue Act of 1928." The Board of Tax Appeals made no specific finding on this issue; but the Court of Appeals assumed that the Board meant to find against the taxpayer, and concluded that the assumed finding was supported by the evidence.

provisions of the Revenue Acts; and that, in addition to other business activities, one may be " regularly engaged in the business of buying .and selling corporate stocks." Compare *Dalton* v. *Bowers,* 287 U. S. 404; *Burnet* v. *Clark,* 287 U. S. 410. *Washburn* v. *Commissioner,* 51 F. (2d) 949. It is also true that the Department has ruled, and the Board has held, that a taxpayer who, for the purpose of making a livelihood, devotes the major portion of his time to speculating on the stock exchange may treat losses thus incurred as having been sustained in the course of a trade or business.[2] Snyder, however, did not allege or attempt to prove that he had devoted the major part, or any substantial part, of his business day to his stock transactions. Nor were there any facts adduced to show that he might properly be characterized as a " trader on an exchange who makes a living in buying and selling securities." *Bedell* v. *Commissioner,* 30 F. (2d) 622, 624; compare *Mente* v. *Eisner,* 266 Fed. 161. Indeed, according to his petition, his intention throughout the year 1928 was, by " taking advantage of the turns of the market," not to draw out cash profits from his operations, but " to increase the holdings of U. G. I. stock carried for his account by [his] brokers to as great an extent as the margin of his account permitted." There is no substantial evidence in the record to sustain a finding by the Board, had there been one, to the effect that Snyder's market operations constituted a trade or business within the meaning of § 22 of the Revenue Act of 1928.

*Fourth.* The attack upon the Commissioner's method of computing income falls with the unsupported allega-

---

[2] I. T. 1818, II–2 C. B. 39; Schwinn *v.* Commissioner, 9 B. T. A. 1304; Elliott *v.* Commissioner, 15 B. T. A. 494; Hodgson *v.* Commissioner, 24 B. T. A. 256; Schermerhorn *v.* Commissioner, 26 B. T. A. 1031. Compare *Black* v. *Bolen,* 268 Fed. 427; *Rogers* v. *United States,* 41 F. (2d) 865; Kunau *v.* Commissioner, 27 B. T. A. 509; Thiele *v.* Commissioner, 32 B. T. A. 134

tion that the stock transactions constituted a "business regularly carried on for profit." In his brief in support of his petition to this Court for certiorari, Snyder makes it clear, perhaps for the first time, that he is "insistent upon the point that the operations constitute a trade or business or transaction entered into for profit, not in order to deduct losses, but to emphasize the controlling rule that the law requires the tax to be computed on the segregated transactions of the year." But it is now too well settled for argument, that gains realized from sales of property purchased in previous years, measured, as prescribed by §§ 111–113 of the 1928 Act, by the excess of proceeds of sale over cost, constitute income taxable in the year in which the sales are made. *Doyle* v. *Mitchell Bros. Co.,* 247 U. S. 179, 184–5; *Hays* v. *Gauley Mountain Coal Co.,* 247 U. S. 189, 192; *MacLaughlin* v. *Alliance Insurance Co.,* 286 U. S. 244, 250. The contention that the rule is applicable only to the sale of capital assets, and not to sales made in the course of a "business of trading on the stock exchange," need not be disposed of on its merits, but see *Gray* v. *Darlington,* 15 Wall. 63, 66; *Merchants' L. & T. Co.* v. *Smietanka,* 255 U. S. 509, 520, since Snyder has failed to establish that the securities sold were held primarily for sale in the regular course of business.[3] And obviously, whether or not the stock transactions constituted a trade or business, the computation of gross income therefrom by deducting from sales of the current year the cost of securities sold, as determined by the purchase prices of previous years, is not comparable to the unsuccessful attempt in *Burnet* v. *Sanford & Brooks*

---

[3] Compare *Hutton* v. *Commissioner,* 39 F. (2d) 459, where the deduction of brokers' commissions on purchases of securities, as business expenses, was disallowed. The Board found that the taxpayer was " engaged in the business of buying, holding and selling realty securities, etc."; but regarded the commissions as " capital expenditures." 12 B. T. A. 265. Compare Vaughan *v.* Commissioner, 31 B. T. A. 548; Keeney *v.* Commissioner, 17 B. T. A. 560.

*Co.*, 282 U. S. 359, to offset gross income of the current
year against losses or expenses of previous years.[4]

*Fifth.* Moreover, Snyder suggests no other practicable
method of accounting which would reflect income for the
year more fairly than the method adopted by the Com-
missioner.[5]  He concedes that he is not a dealer in se-
curities, in the sense of one who buys securities for the
purpose of resale to customers; and that, consequently,
he is not entitled to compute income on an inventory
basis.[6]  Compare *Lucas* v. *Kansas City Structural Steel
Co.*, 281 U. S. 264, 268; *U. S. Cartridge Co.* v. *United
States*, 284 U. S. 511, 520.  His suggestion that gross
income from trading be computed by deducting purchase
prices from sale prices during the year would offer a feasi-
ble substitute only if it could be assumed that the num-
ber of purchases and sales would be approximately equal

---

[4] Proceeds from sales in the regular course of business constitute
gross income of the business only to the extent that they exceed the
cost of the goods sold.  See *Spring City Foundry Co.* v. *Commis-
sioner*, 292 U. S. 182, 185.  Compare Washington Land Co. *v.* Com-
missioner, 10 B. T. A. 503; Atlantic Coast Realty Co. *v.* Commis-
sioner, 11 B. T. A. 416; Stern *v.* Commissioner, 14 B. T. A. 838.  See
Art. 55, Regulations 74, Revenue Act of 1928.

[5] Snyder does not attempt to bring himself within the general rule
of § 41 of the 1928 Act, to the effect that " net income shall be
computed upon the basis of the taxpayer's annual accounting period
in accordance with the method of accounting regularly employed in
keeping the books of said taxpayer."  Neither does he state that the
method he now suggests was followed in his return.

[6] Article 105 of Regulations No. 74, permit dealers in securities to
make returns on inventory basis.  A dealer is defined as a " merchant
of securities, . . . with an established place of business, regularly en-
gaged in the purchase of securities and their resale to customers."
Compare *Harriman National Bank* v. *Commissioner*, 43 F. (2d) 950;
Pan-American Bank & Trust Co. *v.* Commissioner, 5 B. T. A. 839;
Adirondack Securities Corp. *v.* Commissioner, 23 B. T. A. 61; North-
eastern Security Corp. *v.* Commissioner, 29 B. T. A. 297; Lowell *v.*
Commissioner, 30 B. T. A. 1297; Fried *v.* Commissioner, 31 B. T. A.
638; Brendle *v.* Commissioner, 31 B. T. A. 1188.

142

each year and that any differences would be averaged out in the course of a number of years. That assumption is unwarranted, particularly in view of Snyder's professed object "to accumulate as many shares of U. G. I. as he could." [7] His alternative suggestion, that, since purchases in fact exceeded sales during 1928, the "First-in, first-out" rule, if applied at all, should be confined to purchases and sales in the course of the year, adds nothing to the contentions that have already been considered in this case or in *Helvering* v. *Rankin.*

*Affirmed.*

Mr. Justice Stone concurs in the result, but thinks that the petitioner failed to show that the particular shares sold were capable of identification with respect to the date of their purchase, and that they could not be identified merely by the taxpayer's designation of them to the broker as the shares to be sold.

---

[7] In Snyder's computation, although he purports to take " the difference between the purchase price and sale price of shares bought and sold during the year," the cost of the last 1,500 shares bought in one of his two brokerage accounts during the year is deducted from the total cost of purchases in that account, because purchases exceeded sales by 1,500 shares.