SOLOMON B. KRAUS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66369. Promulgated February 12, 1936.

*Henry P. Molloy, Esq.*, for the petitioner.
*H. F. Morton, Esq.*, for the respondent.

1090

OPINION.

ARUNDELL: The respondent, in determining the deficiency applied the first in, first out rule to the sales in 1929, and, as the basis of the earlier acquired shares was lower than that of the shares designated by the petitioner this resulted in an increase in income. Petitioner does not now attempt to sustain his arbitrary selection which he used to compute the gain reported. That obviously was wrong. His present primary claim is that his records sufficiently identified the stock so that the gain on the specific shares sold can be determined and there is no occasion to resort to the first in, first out rule. In the alternative he claims that the total cost of the old stock should be spread over the new, and the average per share thus calculated used as the basis.

Recent cases have laid down some general principles concerning the matters of identification of shares and the application of the first in, first out rule. Stock certificates provide the ordinary means of identification, but they are not the only possible means. A margin trader who has no certificates in his name sufficiently identifies his shares when he designates, through his broker, "the securities to be sold as those purchased on a particular day at a particular price. It is only when such a designation was not made at the time of the sale, or is not shown, that the first-in, first-out rule is to be applied", *Helvering* v. *Rankin*, 295 U. S. 123. In *Miller* v. *Commissioner*, 80 Fed. (2d) 219, stock certificates covering the taxpayer's shares had been issued in either the name of the taxpayer or his broker and were held by the broker. The taxpayer directed the broker to

sell certain shares, designating them by date of purchase and price paid. The broker covered the sale by delivery of certificates other than those specified by the taxpayer. The court held that gain or loss should be computed by using as a basis the cost of the shares designated for sale by the taxpayer, saying that "written instructions to sell embodying the number of shares and dates of purchase are an even more persuasive identification of the shares to be sold than the certificates which a broker may deliver without any thought about the particular lot he is selling." The opinion concluded with this statement:

It follows from the foregoing (1) that where there is no designation by the taxpayer at the time of making the sale, the certificate should be treated as the proper means for identification; (2) that a designation by instructions to the broker of the shares to be sold is controlling though the certificate delivered does not correspond with the instructions; (3) that the "First-in, first-out" rule applies only where there is neither identification by a certificate, nor by designation of the taxpayer.

In *Fuller* v. *Commissioner*, 81 Fed. (2d) 176, the taxpayer had purchased stock at various dates and prices from 1922 to 1928. There was a five for one-split-up of the stock in 1929, and in 1930 the taxpayer sold some of the new shares. He instructed his assistant to sell those shares that had cost the most. The assistant ascertained from the taxpayer's books the lots acquired at the highest prices and instructed the bookkeeper to sell those lots. Sales were made through a broker, and appropriate records made on the taxpayer's books to record the sales as having been made according to his instructions. The court held that the taxpayer's instructions, and the action taken pursuant thereto, identified the new shares sold with specific lots of the old shares, so that cost of the old shares was the proper basis for gain or loss.

The question here is whether this petitioner, under the principles of the above cases, has identified the shares sold in 1929 with any of the old shares owned before the split-up in 1928 so as to use cost of specific lots of the old shares as a basis for gain or loss. It is stipulated that there was no identification of new certificates against old certificates on the books of the Manufacturers Trust Co. There was no such identification by the petitioner himself on his books. Consequently, the only possibility of identification left to the petitioner is that of designation of shares. It is to be noted that in the cases cited above there was in each instance a clear and specific designation by the taxpayer of the shares to be sold contemporaneously with the sale. A mere intention to sell particular shares "without further designation does not constitute sufficient identification." *Snyder* v. *Commissioner*, 295 U. S. 134. Evidence of an intention to retain a

certain *number* of shares, without more particular designation, does not establish the identity of those retained or of those sold. *Helvering* v. *Rankin, supra.* In this case the petitioner made no designation of his shares before or contemporaneously with the sales that can be construed as an identification of them. The schedule copied into his books of account was neither made by him nor pursuant to his instructions. The accountant who made up the schedule was called as a witness and testified that he suggested to the petitioner after the split-up in 1928 that some means be taken to identify the shares. According to the testimony the petitioner "was not very free in his conversation" with the accountant. "He didn't say very much. I don't think he took it very seriously and he discussed it very little." The accountant then went to the petitioner's nephew and had him acquire the old and the new certificate numbers, from which he made up the schedule described in the findings of fact which was copied into his books by the bookkeeper. The petitioner did not authorize the identification purported to be made by the schedule and did not thereafter adopt it as an identification. Indeed, when his return was made up he entirely disregarded the schedule and attempted to compute his gain on a wholly different basis. It is not shown that he ever had any knowledge of the schedule made up by his accountant. The petitioner did not appear as a witness and we have no information at all as to his knowledge of the schedule or of what his intentions were in regard to the shares sold. Nor do we know what instructions, if any, he gave at or before the sale in 1929. Further, we do not know how, if at all, the sale was entered on his books. If his computation of gain in his return can be taken as a record contemporaneous with the sale it amounts to a repudiation of the accountant's schedule. In brief, all we have is a schedule made by someone other than the petitioner, not shown to have been made with the petitioner's knowledge nor ratified by him, and in fact repudiated by him in preparing his tax return. There was thus no identification at all by the petitioner, hence no ground upon which we can compute gain by allocating the sales price of any new shares against cost of any specific shares.

The alternative method proposed by the petitioner is the use of average cost of the old stock as a basis. That method has been applied in cases of sales of stock of a new corporation acquired in a reorganization in exchange for shares of other corporations. See *Christian W. Von Gunten*, 28 B. T. A. 702; affd., 76 Fed. (2d) 670; *Helvering* v. *Stifel*, 75 Fed. (2d) 583; *Olive Hume Oliver*, 30 B. T. A. 1381; affd., 79 Fed. (2d) 561. The rule of those cases is not applicable here, for in this case the petitioner kept the stock of the same

corporation, merely exchanging his old shares for a larger number of shares of the same corporation, the new shares having a reduced par value. The exchange here was of the same kind as in *Fuller* v. *Commissioner, supra*, in which the court held that the taxpayer had sufficiently identified his shares to permit of an allocation of the new shares sold against particular lots of the old stock.

The petitioner here having failed to establish an identification of shares, and the case not being of a kind in which an average cost can be used, it was proper to resort to the first in, first out rule.

The parties have stipulated that if the application of the first in, first out rule is proper in this case, the correct cost is $110,905.08 and the profit on the sale in May 1929 is $774,064.92.

*Decision will be entered under Rule 50.*