**FOLEY et al. v. COMMISSIONER OF INTERNAL REVENUE.**

**COMMISSIONER OF INTERNAL REVENUE v. FOLEY et al.**

Nos. 6282, 6381.

Circuit Court of Appeals, Third Circuit.

Jan. 18, 1938.

Wm. J. Conlen, J. Harry La Brum, George E. Beechwood, and Conlen, La Brum & Beechwood, all of Philadelphia, Pa., for taxpayers.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Berryman Green, both of Washington, D. C., for Commissioner.

Before BUFFINGTON, THOMPSON, and BIGGS, Circuit Judges.

BIGGS, Circuit Judge.

Two appeals are here involved. The first is in case No. 6282 and is that of the executor and executrices of the estate of Thomas J. Foley from a decision of the Board of Tax Appeals. The second is in case No. 6381, and is the appeal of the Commissioner of Internal Revenue from a decision of the Board. Since both appeals arise largely out of the same facts and circumstances, they will be considered by us in one opinion.[1]

*(1) As to the Appeal on Behalf of the Estate of Thomas J. Foley, Deceased.*

The petitioners seek a review of a decision of the Board of Tax Appeals, holding that deficiencies in income taxes for the year 1928 and 1929, respectively, in the amounts of $754.39 and $7,609.86, shall be assessed against the estate of Thomas J. Foley, deceased. There is no disagreement between the parties to the litigation as to essential facts, but, since there are a number of factual situations involved, we will deal with each separately.

(a) As to Shares of United Gas Improvement Company Stock Sold by the Taxpayer Between October 8, 1928 and December 24, 1927, inclusive.

The earliest purchases of stock of United Gas Improvement Company by the taxpayer were made through his account at Ware & Co. Between November 24, 1926, and August 9, 1927, inclusive, he purchased 1,500 shares of this stock. Between March 28, 1927, and August 25, 1927, inclusive, he sold 800 shares. There can be no doubt that the 800 shares thus sold are referable to the first 800 shares bought. 700 shares remained in the account, and these 700 shares must be deemed to be the last 700 shares purchased. It is a necessary and proper inference, therefore, that the 700 shares last bought were transferred upon September 27, 1927, from Ware & Co. to the taxpayer's new account at Wasserman & Co., pursuant to the taxpayer's order.

Between October 4, 1927, and December 18, 1928, inclusive, the taxpayer purchased through Wasserman & Co. for his account with them 1,400 additional shares of United Gas Improvement Company stock. He also delivered to the account 250 shares as collateral. The cost and date of purchase of the 250 shares last referred to is not shown by the record. Upon September 25, 1928, 1,000 shares of the stock were delivered by Wasserman & Co. to the taxpayer. These shares are incapable of identification. At the time of the delivery of these shares, the taxpayer's account contained 1,750 shares. This total was made up as follows: 700 shares received from the transfer of the taxpayer's account from Ware & Co., as stated; 800 shares purchased by him upon divers dates; part of the 1,400 shares first referred to in this paragraph; and the 250 shares deposited by the taxpayer in the account by way of security. When the 1,000 shares had been delivered to the taxpayer, his account was 750 shares long. Of the remaining shares, 200 were sold by the taxpayer upon October 8, 1928; 350, upon October 22, 1928; and 100, upon December 24, 1928. This constituted a total of 650 shares sold. The price obtained therefor was $95,487.

The dispute between the petitioners and the respondent is as to what shall be deemed to be the cost price to the taxpayer of the 650 shares last referred to. They are incapable of identification.

The answer to this question must turn

---

[1] Both petitions have been filed pursuant to the provisions of sections 1001 and 1003 of the Revenue Act of 1926, c. 27, 44 Stat. 109, 110, as amended by section 1101 of the Revenue Act of 1932, c. 209, 47 Stat. 286, and section 519 of the Revenue Act of 1934, c. 277, 48 Stat. 760, 26 U.S.C.A. §§ 641(a), (c) (1–3) and 642.

upon the interpretation of Article 58 of Regulations 74 of the Treasury Department, commonly referred to as the "first in, first out," rule, as applied to the facts of the case at bar. This rule reads as follows: "Art. 58. Sale of stock and rights.— When shares of stock in a corporation are sold from different lots purchased at different dates and at different prices and the identity of the lots can not be determined, the stock sold shall be charged against the earliest purchases of such stock."

The contentions of the petitioners may be stated briefly as follows: The Commissioner used as the cost price basis of the 650 shares sold the cost price of the first 650 shares of the 700 shares purchased in the taxpayer's account with Ware & Co. and delivered by the taxpayer's order to Wasserman & Co. upon September 27, 1927. 800 shares of stock were purchased in, and 250 shares were delivered to, the taxpayer's account with Wasserman & Co. prior to the delivery of the 1,000 shares out of that account to the taxpayer. The petitioners urge, first, that the "first in, first out," rule applies to stock delivered out of the account as well as to stock sold out of the account, but, and this is their second contention, that if this court should hold otherwise, it must hold as a necessary, even inevitable corollary, that the "first in, first out," rule must also apply to stock delivered into the account, that is to say, to the 700 shares delivered by Ware & Co. to Wasserman & Co. at the time of the transfer of the account, and the 250 shares delivered to the Wasserman & Co. account as additional security, as well as to stock purchased for the account.

It will be observed that, if the first theory urged by the petitioners be followed, the cost basis of the 650 shares sold will consist of the combined purchase prices of the first 100 of the 200 shares purchased upon October 6, 1927, in the Wasserman & Co. account, the 200 shares purchased therein on October 7, 1927, the 200 shares purchased therein on May 10, 1928, the 100 shares purchased therein on September 28, 1928, and 50 shares of the 200 shares purchased therein on October 3, 1928. If we follow the alternative theory urged by the petitioners, we must hold that the 950 shares delivered into the Wasserman & Co. account by the taxpayer (700 shares transferred from Ware & Co. and 250 shares supplied as additional collateral) may be used solely against the 1,000 shares

delivered out of the account. The cost basis of the 650 shares of stock sold must then be ascertained by the cost price of the first 650 shares purchased in the Wasserman & Co. account.

If we follow either theory, the ruling of the Board must be reversed.

Now it must be noted that none of the shares bought or delivered into the account or sold or delivered out of the account is capable of identification.

Article 58 of Regulations 74 of the Treasury Department was devised to the end that a definite basis to ascertain profit or loss upon sales of stock might be arrived at. Helvering, Commissioner v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L. Ed. 1343; Snyder v. Commissioner, 295 U. S. 134, 55 S.Ct. 737, 79 L.Ed. 1351. By its very terms it can be applied only to stock sold and cannot be applied to stock delivered out of an account. To apply either theory here sought by the petitioners in our opinion would compel the Commissioner, the Board of Tax Appeals, and the courts to embark upon a course of sheerest speculation in which no tribunal could arrive at a certain and definite result.

In the case at bar the Commissioner and the Board, by applying the cost basis of the first 650 shares of the 700 shares delivered out of the Ware & Co. account to the Wasserman & Co. account, against the selling price of the 650 shares sold, applied precisely and accurately the "first in, first out," rule. The fact that 650 shares of stock were taken out of one brokerage account and placed in another, in our opinion, can confer no benefit upon the taxpayer. These shares were first in point of time of purchase of all shares remaining in the taxpayer's account at Ware .& Co. at the time of the transfer of that account to Wasserman & Co. We think that the application of the purchase price of these shares as the cost basis of the 650 shares here in controversy constitutes a literal compliance with the "first in, first out," rule.

In this regard, therefore, we sustain the ruling of the Board of Tax Appeals.

(b) As to Losses Resulting to the Taxpayer from the "Edward Foley" Account.

█ The petitioners seek to avail themselves, pursuant to the provisions of section 23 of the Revenue Act of 1928, c. 852, 45 Stat. 791, 799, 26 U.S.C.A. § 23 and

note of Regulations 74 of Article 342, of the Treasury Department, of certain alleged losses which they contend took place in the year 1929. The Board of Tax Appeals held, however, that the alleged losses referred to did not take place in 1929 and proceeded to determine a deficiency in tax due from the taxpayer's estate for that year.

The circumstances under which this phase of the controversy arises are as follows: The taxpayer had a son, Charles F. Foley, who was employed by F. B. Keech & Co. as a customers' man. The taxpayer had had a margin account with Wasserman & Co. in the name of Charles F. Foley and had controlled and directed the transactions in that account. The taxpayer, upon January 11, 1929, ordered this account transferred to Keech & Co., and Wasserman & Co., precisely fulfilling its obligations, so transferred it. As the result of a conspiracy between the taxpayer's son and one Quigley, then the manager of the Philadelphia office of Keech & Co., the account so transferred was received and kept by Keech & Co. in the name "Edward Foley." As a matter of fact, there was an Edward Foley in existence. He was the taxpayer's grandson, a minor, but the account was in all respects a fictitious one.

On or about January 11, 1929, Keech & Co. received a letter signed by the taxpayer, stating, "I beg to advise you that any security I may have on deposit with your company can be used by you as collateral and security for the accounts of Mrs. Ellen Kerrigan, Mrs. Catherine La-Brum and Edward F. Foley". As a result of the conspiracy referred to between the taxpayer's son and Quigley, the name "Edward Foley" was added to this letter without the knowledge or consent of the taxpayer. Upon October 9, 1930, the taxpayer signed another letter addressed to Keech & Co. in the following terms: "I hereby authorize you to open a Guarantee Account under my name to be known as the T. J. Foley Guarantee Account, for the purpose of guaranteeing the accounts carried in this office of: Kathryn La Brum, Ellen Kerrigan, Edward Foley, Thomas J. Foley, Jr., F. H. Foley. I further authorize you to withdraw collateral funds from the T. J. Foley Guarantee Account to take care of the debits in any of these accounts mentioned above that I am guaranteeing. I will also continue to guarantee the accounts named above with my regular

account carried in your office and known as the T. J. Foley Account, Philadelphia, No. 258."

The circumstances under which the last letter quoted was procured are not plain from the record. In the bills of complaint and amendments thereto filed by the taxpayer against Keech & Co. in suits to recover securities, it is alleged that, though the taxpayer signed this letter, Quigley caused the name of Edward Foley to be included therein, implying that this act was perpetrated by fraud and subterfuge.

Upon October 11, 1930, the taxpayer received a letter from Keech & Co., dated October 10, 1930, which stated: "At the close of market today your account needs $80,500.00 to meet our marginal requirements. Kindly let us have your check to cover this amount by return mail."

Without going into unnecessary detail, what had happened was that the taxpayer's son and Quigley had used the fictitious Edward Foley account for the purposes of their own speculations and, having sustained very substantial losses in that account, now took the position, and had caused Keech & Co. to take the position, that the transactions therein had been carried on pursuant to the authority of the taxpayer and that he was therefore liable for the losses in the Edward Foley account.

The Edward Foley account had been constantly traded in by the taxpayer's son and Quigley and showed various debit balances, ranging from a minimum debit balance of about $59,000 in February, 1929, to a maximum debit balance of about $614,000 at the end of July, 1929. Upon January 31, 1930, the debit balance in the account was about $201,000, rising to about $405,000 upon June 30, 1930. Upon final accounting between the parties on October 10, 1930, the debit balance in the Edward Foley account was about $312,000. The collateral security in the account was valued at about $40,000.

Upon the receipt of the call letter, the taxpayer became aware of the deception practiced upon him. He thereupon tendered to Keech & Co. the debit balances which he deemed to be due upon all accounts with Keech & Co. upon which he had liability by way of guarantee or otherwise, other than the Edward Foley account, and demanded the delivery of the securities in these accounts. When his demand was refused, suits were brought for accounting and other relief against

Keech & Co. The taxpayer died upon January 10, 1932. All litigation terminated in a settlement which took place on or about September 1, 1932, before any trial of issues was had.

The agreement of settlement disposes of "all litigation and controversies" between the estate of Thomas J. Foley and certain named descendants, and provides for general releases to be executed and delivered by the parties to the controversy to each other. As the result of the settlement, the taxpayer's estate received in September, 1932, from Keech & Co., 6,100 shares of United Gas Improvement Company stock, possessing a value of $124,287.50, and $1,830 in cash.

The petitioners contend that the taxpayer sustained a loss of $185,217.90 during 1929, which is deductible from the gross income of the taxpayer for the year 1929 within the provisions of the section of the Revenue Act referred to, "as a result of the unlawful appropriation and pledging of taxpayer's securities in the margin account" of Edward Foley, and that the alleged appropriation and pledging referred to constituted an embezzlement. I. C. Brill v. Commissioner, 30 B.T.A. 40; Earle v. Commissioner, 2 Cir., 72 F.2d 366. The Board found that the loss did not occur in 1929. The gist of the question presented to us therefore is, did the loss to the taxpayer take place in 1929?

The record herein shows no appropriation, or any act tending to show appropriation, by Keech & Co. of any securities in the taxpayer's account at least until the time of the dispatch of the call letter of October 10, 1930, heretofore referred to. The record shows no loss whatsoever to the taxpayer in the year 1929, nor does it indicate that any securities of the taxpayer were appropriated by Keech & Co. in 1929 as security for any debit balance in the Edward Foley account. True it is that the acts of the taxpayer's son and Quigley, done in conspiracy, ultimately resulted in substantial loss to the taxpayer, a loss which was completely consummated upon September 1, 1932, when the agreement of settlement was made between Keech & Co. and the taxpayer's representatives, but we feel that we should point out that embezzlement within every known definition is based upon appropriation. The fact that in 1929 a letter was procured from the taxpayer by fraud and deceit purporting to pledge his securities as collateral for a fictitious account is of itself in our opinion insufficient to constitute appropriation, and the record is devoid of other evidence to support the petitioners' contention in this regard.

We therefore sustain the ruling of the Board of Tax Appeals in holding that the loss to the taxpayer did not occur in the year 1929 and is therefore not deductible from gross income in that year.

(c) In Respect to the Inclusion of Items Totaling $120,976.01 as Income of the Taxpayer for the Year 1929.

The Board added to the income of the taxpayer for the taxable year, viz., 1929, interest on the credit balance of his account with Keech & Co., dividends credited to that account and profit on the sale of certain shares of United Gas Improvement Company stock held therein, these items totaling $120,976.01. The petitioners contend that the sums referred to cannot be treated as income because, in the view of the petitioners, these moneys were not actually realizable or available to the taxpayer in his account, since the securities therein, creating any credit balance whereby withdrawals from the account might be made, were embezzled and unlawfully pledged in the year 1929 to secure loans in the Edward Foley account. We cannot sustain this view.

The record shows that during the year 1929 drafts exceeding $250,000 were debited to the taxpayer's account, indicating that such sums were withdrawn by him. The petitioners contend that the sums thus withdrawn represent nothing more than the cash proceeds of the sale of stock made by the taxpayer in 1929; i. e., a withdrawal of capital. Some portion of the $250,000 was of necessity a withdrawal of capital, since the increase in the account otherwise was insufficient to support the amount of the drafts. But the petitioners contend that the credits were not available to the taxpayer as income in 1929 because the securities in his account were insufficient to meet the marginal requirements of the accounts for which he was properly liable, for the Edward Foley account, and for the withdrawal of $250,000. The petitioners argue, therefore, that every penny in an account must be available before any penny is available. Such an argument is metaphysical. No one can say whether the moneys credited to the credit of the taxpayer's account in 1929 were or were not withdrawn as part of the sums

withdrawn, but it is not necessary to determine this. The test is the availability of the sum credited to the account of the taxpayer. If available, it is taxable as income. Eisner v. Macomber, 252 U.S. 189, 207, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570; Commissioner v. R. J. Darnell, Inc., 6 Cir., 60 F.2d 82, 85; Mutual Benefit Life Insurance Company v. Herold, D.C., 198 F. 199, 215. That the items referred to were in fact available in 1929 to the taxpayer is clear beyond question, since he withdrew from this account a sum equal to twice the amount of them. To take the position that, because the entire account of the taxpayer was not available to him in 1929, the sum of $120,976.01 was also not available, is manifestly untrue.

We therefore sustain the ruling of the Board that the total of the items referred to, viz., $120,976.01, was received by the taxpayer as taxable income in the year 1929.

*(2) As to the Appeal on Behalf of the Commissioner of Internal Revenue.*

■ This appeal is docketed as the petition of the Commissioner of Internal Revenue against the executor and the executrices of Thomas J. Foley, deceased, and bears our docket No. 6381. The circumstances of the case are as follows:

The taxpayer had an account with Wasserman & Co. in the name of Charles F. Foley. He ordered this account transferred to Keech & Co. where it was to bear his own name. One hundred shares of United Gas Improvement Company stock (old) was transferred by the taxpayer to Keech & Co. to be used as collateral for this new account. These 100 shares of stock however were not treated as ordered by the taxpayer but were placed in a fictitious Edward Foley account. Upon January 28, 1929, the shares were sold for $17,673 and the proceeds were received in that account.

The shares had been purchased by the taxpayer upon May 10, 1928, for the sum of $14,512.50, and this sum was held by the Board to constitute a loss suffered by the taxpayer in the year 1929 and properly to be deductible from gross income for that year pursuant to the provisions of section 23(e) of the Revenue Act of 1928, c. 852, 45 Stat. 791, 800, 26 U.S.C.A. § 23(e) and note. Within the terms of the statute referred to a loss is deductible from gross income unless it be compensated for by

insurance or otherwise. Dunne v. Commissioner, 2 Cir., 75 F.2d 255. The petitioner, the Commissioner of Internal Revenue, contends that the settlement of the taxpayer's suit or that brought on behalf of his estate, against Keech & Co., compensated his estate for the loss referred to.

In the bills of complaint filed in the suits brought by the taxpayer in the District Court of the United States for the Eastern District of Pennsylvania and in the court of common pleas for the city and county of Philadelphia, specific reference is made to these shares of United Gas Improvement Company stock. The refusal of Keech & Co. to deliver this stock to the taxpayer is the basis of one of the complaints made against Keech & Co. All litigation between the taxpayer, his estate, and Keech & Co. was disposed of by the settlement agreement of September 1, 1932. The taxpayer's estate received 6,100 shares of the stock of United Gas Improvement Company and a cash dividend. The estate sustained none the less a very large loss. In respect to this loss and compensation therefor the Board, in its opinion, stated:

"If there had been an account in the name of Charles F. Foley, and if the shares had been sold in that account, the decedent might not be entitled to any deduction for loss. cf. J. Edgar Davidson et al., Executors, v. Commissioner, 26 B.T.A. 754. But there was no Charles F. Foley account and the shares were diverted to and sold in the Edward Foley account. The stipulation is that this account was owned and run by Charles F. Foley for his own benefit. The decedent did not intend to give the shares to his son nor did he intend that they should be sold and the proceeds retained by his son. The evidence establishes a loss which is deductible under section 23 (e) (3) to the extent that it is not compensated for by insurance or otherwise. The fair inference from the entire stipulation is that the decedent was not compensated for his loss by insurance or otherwise."

We do not agree with this inference drawn by the Board and referred to in the last sentence just quoted. The loss of the 100 shares was compensated for to some extent at least by the settlement which disposed of all the points in controversy between the parties. To assume that this loss, alone, out of all the losses claimed by the taxpayer's representatives, was not considered in arriving at the consideration of the

settlement, is, in our opinion, an inference unsupported by the evidence.

No distinction between losses was made in the settlement. In our opinion no distinction can now be made to the end that under the settlement one loss alone shall be treated as completely uncompensated for.

In this regard we therefore reverse the ruling of the Board and hold that the loss occasioned to the taxpayer by the sale of the 100 shares of stock and the appropriation of the funds therefrom is not a loss deductible ·from gross income, since it was compensated for, at least to some extent, by the settlement of September 1, 1932.

In view of the foregoing we remand these cases to the Board of Tax Appeals, with instructions to redetermine the tax liability of the estate of Thomas J. Foley, deceased, in accordance with this opinion.