Yvonne C. Le Baron, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 89856.    Promulgated April 12, 1939.

*Howe P. Cochran, Esq.*, and *Margaret F. Luers, Esq.*, for the petitioner.

*W. Frank Gibbs, Esq.*, for the respondent.

OPINION.

HILL: The sole question presented for decision is whether the gain or loss resulting from the sale of 600 shares of Coty stock by Hentz & Co. for petitioner during 1934 should be determined upon the basis of the cost to petitioner of the 600 shares of Coty stock transferred to Hentz & Co. by the Chase Bank and Morgan & Co. in 1936, 300 shares of which had a cost basis of approximately 33 and the remainder a cost basis of 27; or whether such gain or loss should be determined on the basis of the cost of the Coty stock purchased for petitioner by Hentz & Co. in 1934, which cost varied from about 5.70 to 6.32. More briefly and simply stated, the question is whether the sales of Coty stock made in January and February 1934 by the brokerage firm of Hentz & Co. for petitioner were short sales transactions or sales of the shares of Coty stock delivered to the brokers by the Chase Bank and Morgan & Co. in 1936.

The parties agree that if the sales referred to are held to be short sales transactions, the Board shall approve the deficiency determined by respondent; but if it is held that the Coty stock sold in 1934 was the 600 shares transferred to the brokers by the Chase Bank and Morgan & Co., then the amount of the loss computed by petitioner, and shown in her amended return, is correct.

On January 9, 1934, Hentz & Co. purchased for petitioner 100 shares of Coty stock. On January 17 the brokers sold on petitioner's order 100 shares and delivered in satisfaction of that sale the shares purchased on January 9, since petitioner had no other shares on deposit with the brokers and had not given instructions to sell other specific shares. On February 6 the brokers sold for petitioner 200 shares of the same stock, a like number of shares on February 9, and 100 shares on February 15, making a total of 500 shares so sold. Petitioner then had no Coty stock deposited with the brokers and again gave

no instructions to sell specific shares, although she had a large number of shares deposited in custodian accounts with the Chase Bank and Morgan & Co. So far as shown, the brokers had no information concerning the stock in custodian accounts, but, in any event, treated the sales above mentioned as short sales transactions, recording the same in petitioner's "Short or Delayed Delivery Account." On February 9 the brokers borrowed 400 shares to make delivery on the short sales of February 6 and 9. Thereafter, on orders of petitioner the brokers purchased 200 shares of Coty stock on May 7, the same number on the 14th, and 100 shares on the 15th, making total purchases of 500 shares, which they applied to satisfy the 400 shares borrowed on February 9 and the sale of 100 shares on February 15.

The brokers mailed to petitioner each month a statement reflecting the transactions had with the firm in the preceding month. Such a statement was mailed in March 1934, showing the February short sales recorded in petitioner's "Short or Delayed Delivery Account." Yet petitioner did not advise the brokers of any objection to their method of treating the transactions or that she intended to sell shares of Coty stock which she had on deposit with either Chase or Morgan, nor did she direct either of the latter firms to deliver any shares of her stock to the brokers to be used in satisfying the 400 shares borrowed to make delivery on the short sales until approximately a year and a half thereafter.

Petitioner's income tax return for 1934 was filed for her by the Chase bank on June 15, 1935, and on September 4, 1935, petitioner requested by cablegram a statement showing how the capital gain reported in such return had been computed. And it was not until December 28, 1935, that she directed the Chase Bank and Morgan & Co. to deliver the 600 shares of Coty stock to the brokers.

We can not conclude from the foregoing facts that it was petitioner's intention to sell shares of stock on deposit with Chase Bank and Morgan & Co. at the time she gave instructions to Hentz & Co. in February 1934 to sell for her account 500 shares of Coty stock. She then well knew that she had no shares of such stock on deposit with the brokers, and, after being informed by the brokers that they had treated the transactions as short sales, she made no move to transfer to the brokers shares of Coty stock from her custodian accounts to replace the shares borrowed by the brokers, which were in fact replaced by the purchases made in May 1934, of which fact petitioner was promptly advised and to which she made no objection.

There is no suggestion in the record that the brokers acted without authority in treating the sales as short sales transactions, nor does petitioner now contend that they violated in any manner her instruction in so doing. But even if petitioner had instructed the brokers

to sell shares out of her custodian accounts, the fact is she subsequently failed to direct Chase Bank or Morgan & Co. to deliver to the brokers the required number of shares to satisfy the short sales, and thereafter acquiesced in the action of the brokers in so applying shares purchased in May 1934; hence, she could not prevail in her present contentions. Petitioner undoubtedly had the right to deliver the shares purchased in May 1934 rather than those contained in her custodian accounts, if she desired to do so. Her acquiescence in such action of the brokers does not indicate an intention at that time to sell other shares. Tax liability must be determined not on a taxpayer's intentions but on the basis of what was actually done. And the taxpayer may make short sales of stock in which he has at the same time a long account. Cf. *Henry F. duPont*, 38 B. T. A. 1317.

In *Davidson* v. *Commissioner*, 305 U. S. 44, affirming 94 Fed. (2d) 300, which had affirmed 34 B. T. A. 555, the taxpayer directed his broker to sell 1,000 shares of stock purchased earlier in the year at $49.90 per share. He directed the bank to deliver to the broker shares representing such purchase, but the bank actually delivered certificates representing a purchase at $4.42 per share, which shares the broker sold. In its opinion, the Supreme Court said:

   \* \* \* Undoubtedly, petitioner sufficiently indicated to the broker and to the bank the shares he intended to sell. He plainly allocated the lots to be sold to the 1,000 shares he bought in 1929. But it does not follow that they were the shares sold. His intention to sell, even when coupled with his order to the broker and direction to the bank, cannot be held to constitute sale. *Snyder* v. *Commissioner*, 295 U. S. 134, 137. Notwithstanding his order to the broker to sell shares in the 1929 lot, petitioner was free later to direct that shares from the other lot be used for final consummation of the sale. And so, when the bank delivered him certificates of stock not designated in his order to sell, the broker may well have assumed that petitioner's final purpose was to sell the shares covered by the certificates that the bank sent him. He had no reason to suppose that the bank did not act in accordance with instructions given it by petitioner. The case is not different from what it would have been, if petitioner himself had delivered to the broker the certificates sent by the bank. Plainly, petitioner's contention that the certificates used to complete the sale did not cover the shares sold cannot be upheld. *Commissioner* v. *Rankin*, 295 U. S. 123, 128. The commissioner rightly computed gain on the basis of what was done rather than on what petitioner intended to do. \* \* \*

On brief petitioner cites, among others, in support of her contention that the transactions in question were not short sales, *Commissioner* v. *Ferree*, 84 Fed. (2d) 124, affirming 32 B. T. A. 725, and *Dee Furey Mott*, 35 B. T. A. 195. The cited cases are not in point. In distinguishing the *Mott*, *Ferree*, and other decisions, we said in *Henry F. duPont, supra:*

   In all of the above cases where it was held that the sales were not short sales the evidence showed that at the time of the transaction the taxpayer had a clear intention to sell the specific shares which he then held, and so instructed his broker. No such facts obtain in the proceeding at bar.

The language above quoted is equally applicable here.

For the reasons indicated, we hold that the sales in controversy were short sales transactions, and approve the deficiency determined by respondent.

*Decision will be entered for the respondent.*