LASSER, P.J.T.C.
Taxpayers, John F. and Carolyn M. Gilligan, contest a New Jersey gross income tax deficiency assessment of $2,648.11, including penalty and interest, imposed on them by the Director, Division of Taxation (“Director”) for tax year 1987 pursuant to N.J.S.A. 54A:1-1 et seq. At issue is the deductibility of margin interest and other expenses associated with the buying and selling of securities. The facts which follow are from taxpayers’ answers to interrogatories and testimony given by Mr. Gilligan at trial, and are uncontradicted.
John Gilligan retired from a position in the computer industry on July 30, 1984. Prior to his retirement, he had maintained a home office in connection with his securities activities. After his retirement, he began personal, full-time management of his own stock portfolio. Typically, Mr. Gilligan’s day included viewing financial newscasts, reading various financial, electronics and computer publications, placing buy/sell orders in the morning based on decisions he made the previous evening, obtaining final quotations on his stock holdings, reviewing any new developments during the day and making buy/sell order decisions for the next day. On occasion, he made telephone calls to individuals he had met during his prior employment in the computer industry to discuss developments in their companies or to obtain Securities and Exchange Commission (SEC) filings. He also called his broker to request bid/ask quotes or to verify his equity and margin positions. He had no direct contact with anyone on any stock exchange. His day usually began at 7:30 a.m. and continued beyond 8:00 p.m., at which time he accessed the Dow Jones news retrieval for corporate insider SEC filing information. During 1987, Mr. Gilligan also traveled on three overnight business trips on matters related in part to his securities activities.
Mr. Gilligan averaged four broker contacts in a trading day, 90% of which were to place orders, with an approximate $12,-000,000 gross volume of securities bought and sold in 1987. Although taxpayers’ federal tax returns from 1981 through *417 1987 indicate stock buy/sell activity throughout the period, Mr. Gilligan stated that the major difference was that this activity increased following his retirement in 1984. Following are the total sales figures reported taxpayers federal tax returns:
[[Image here]]
As a result of making his own buy/sell decisions and trading exclusively through one Paine Webber stockbroker, he was able to negotiate a preferential commission discount rate in 1987 of 35-50% on commissions paid to Paine Webber. Mr. Gilligan did not rely on his broker for research and recommendations, but on his own information obtained through the sources mentioned above.
During 1987, Mr. Gilligan had a home office equipped with personal computer hardware and software, a modem, a television set and a typewriter. He also maintained a separate telephone line for his securities activity, subscribed to Dow Phone and Dow Jones news retrieval services and a cable television service, all of which allowed him to monitor financial news and the stock market. Mr. Gilligan used his home office to prepare computer printouts, review the various financial sources, collate the information obtained into a personally-developed software program, make buy/sell order decisions and keep records of his activities. He employed no one, offered no goods and services to the general public and had no clients. He maintained no separate business bank account.
Mr. Gilligan decided to work full time on stock activities because he estimated he “could make 6% to 7% more” on his two million dollars in equity by trading, instead of following “a passive investment” approach. He said he was not a “day trader” because he was more “comfortable with equities ... [which] typically don’t change that rapidly ... if [I] think it is a *418 good investment, [I] may look at selling in 6 months.” He preferred secondary companies, i.e., companies with revenues under $800 million a year. These companies had a higher return with higher risk, a risk which is “generally known.” Mr. Gilligan said that when he made a purchase, he did not think about how long he would hold the security. Mr. Gilligan’s average holding period was 8.8 months.
For the 1987 tax year, taxpayers filed a New Jersey gross income tax return which indicated “Net gains or income from disposition of property” (from schedule B, line 4) of $976,070. Taxpayers arrived at this amount as follows:
[[Image here]]
Schedule C lists no business revenues, but lists itemized business expenses, including car expenses, depreciation, dues and fees, office supplies, partial house expenses, travel expenses, payments for Dow Phone and the Dow Jones news retrieval service, a business telephone, tuition and textbooks for courses at New York University and a Value Line subscription. The deductible investment (margin) interest listed on schedule A was due to his “highly leveraged” position in the market.[1]
Taxpayers contend that Mr. Gilligan was engaged in the “operation of a business, profession, or other activity,” pursu *419 ant to N.J.S.A. 54A:5-l(b), as a stock trader, and thus, they are entitled to a deduction of $21,448 for itemized business expenses incurred and a deduction of $250,566 for margin interest incurred.
The Director contends that John Gilligan’s activities indicate that he was a personal investor and was not engaged in the “operation of a business, profession, or other activity,” and therefore he should be denied the deductions from income for itemized business expenses and margin interest.
The New Jersey individual income tax is a tax on gross, not net, income. Many expenses which may be deductions for federal income tax purposes may not be deducted from income on the New Jersey gross income tax return. There may be instances where expenses are incurred in the production of income which are not deductible from that income. Margin account interest can be a substantial expense, but under the New Jersey gross income tax scheme it is only deductible if the income generated comes within the § 5-l(b) exception which allows deduction of business expenses. Section 5-l(b) states:
b. Net profits from business. The net income from the operation of a business, profession, or other activity, after provision for all costs and expenses incurred in the conduct thereof, determined either on a cash or accrual basis in accordance with the method of accounting allowed for federal income tax purposes but without deduction of taxes based on income.
Unless taxpayers’ income was derived from the operation of a business, these expenses may not be used to reduce taxpayers’ income subject to tax. Thus, the critical inquiry is whether taxpayers’ income was derived from the operation of a business under N.J.S.A. 54A:5-1.
The New Jersey Gross Income Tax Act does not define the term “business,” nor have regulations been enacted which define this term. In Marrinan v. Taxation Div. Director, 10 N.J.Tax 542 (Tax Ct.1989), this court found that New Jersey cases rely upon and are in accord with the federal judicial definition of “business.” Id. at 551. See Applestein v. Taxation Div. Director, 5 N.J.Tax 73 (1982), aff’d 6 N.J.Tax *420 347 (App.Div.1984); Walsh v. Taxation Div. Director, 183 N.J.Super. 370, 4 N.J.Tax 107, 443 A.2d 1128 (Tax Ct.1982).
The federal courts have recently commented on the lack of a consistent definition of “business” in this context. In C.I.R. v. Groetzinger, 480 U.S. 23, 27, 107 S.Ct. 980, 983, 94 L.Ed.2d 25 (1987), the Court said:
The phrase “trade or business” has been in Section 162(a) [of the Internal Revenue Code] and in that section’s predecessors for many years. Indeed, the phrase is common in the Code ... The concept thus has a well-known and almost constant presence on our tax-law terrain. Despite this, the [Internal Revenue] Code has never contained a definition of the words “trade or business” for general application, and no regulation has been issued expounding its meaning for all purposes. Neither has a broadly applicable authoritative judicial definition emerged.
However, the federal courts have consistently maintained the distinction between engaging in a trade or business and investing. Walsh, 4 N.J.Tax at 112. The Court in Snyder v. Commissioner, 295 U.S. 134, 55 S.Ct. 737, 79 L.Ed. 1351 (1935), held that an investor, seeking merely to increase his holdings, was not engaged in a trade or business. In Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941), rehearing denied, 312 U.S. 714, 61 S.Ct. 728, 85 L.Ed. 1145 the Supreme Court concluded that the management of one’s investments does not constitute the carrying on of a trade or business. The expenses incurred were, therefore, not deductible as trade or business expenses. Further, the Court in Higgins concluded that whether the activities of a taxpayer constitute “carrying on a business” or merely investment management requires an examination of the facts in each case. 312 U.S. at 217-218, 61 S.Ct. at 477-478.
The Groetzinger Court concluded from a review of the prior federal cases on the subject: “(1) that, to be sure, the statutory words are broad and comprehensive; (2) that, however, expenses incident to caring for one’s own investments, even though that endeavor is full time, are not deductible as paid or incurred in carrying on a trade or business; (3) that the opposite conclusion may follow for an active trader....” Id. *421 480 U.S. at 32, 107 S. Ct. at 985; citations omitted. Groetzinger further stated,
Of course, not every income-producing and profit-making endeavor constitutes a trade or business. The income tax law, almost from the beginning, has distinguished between a business or trade, on the one hand, and ‘transactions entered into for profit but not connected with ... business or trade,’ on the other. Congress ‘distinguished the broad range of income or profit-producing activities from those fitting the narrow categories of trade or business’. [Id. at 36, 107 S. Ct. at 987; citations omitted]
The federal cases make a distinction between trade or business and personal investment, and that distinction is determined by the facts of each case. Following this federal approach, the Tax Court, in Applestein v. Taxation Div. Director, 5 N.J.Tax 73 (Tax Ct.1982), aff'd 6 N.J.Tax 347 (App.Div.1984), relied on the frequency, extent and regularity of the taxpayer’s securities transactions, the amount of personal investigation in connection with his activities and whether the holding periods were short-term or long-term. In addition, facts which would establish either a business intent or merely an intent to preserve and enhance the taxpayer’s personal estate should be considered.
In Marrinan, supra, the taxpayer, whose activities were found to constitute a business, was engaged full time in trading securities on a short-term basis. He maintained a separate office outside his home and had one full-time and one part-time employee. At the end of each day, he tried to get out of positions taken during the day; 90% of his trades were on a day-to-day basis. He used his own name as well as various trade names. He kept a separate bank account, payroll records and ledger book for his securities activities. He made an average of 15 to 20 trades a day, and in the year in issue his total trading volume was $97,000,000. In contrast, the subject taxpayer, although engaged full-time, maintained no separate office outside his home, no separate bank account, had no employees, dealt through a single stockbroker and had an average of three or four broker contacts a day, but fewer trades. His research consisted primarily of reviewing secondary sources. His purchases were held, on average, more than *422 eight months, and his stated purpose was to enhance the return on his personal estate by investing in higher-risk securities.
The distinction between a person who operates a securities business and a personal investor is not only the volume of trading activity or the annual dollar volume but the intention of the taxpayer as evidenced by the facts surrounding the taxpayer’s activity. If the transactions tend to be on a day-to-day basis so that the activities are those of a day trader, and if the location of the activities and the books and records of the operation have the characteristics of the operation of a business rather than the management of a personal estate, a business activity is indicated.
I conclude from the facts of this case that taxpayer’s activities, although full-time and of substantial volume, are still the activities of a personal investor managing his own estate, and these activities do not meet the test that identifies a “business” under N.J.S.A. 54A:5-l(b). Therefore, his margin interest and other expenses incurred in connection with his investment activity are not deductible from his gross income.
The Clerk of the Tax Court is directed to enter judgment in favor of the Director.

 I note that this investment interest was listed on taxpayers' federal 1040 form on schedule A, which generally includes personal itemized deductions, not on schedule C (profit or loss from business or profession). On taxpayers’ New Jersey 1040 form, federal schedule C expenses were added to schedule A margin interest and the total deducted from net gains or income from disposition of property on line 42. Line 41 on the New Jersey 1040 form (net profit from business) was left blank.