## APPEAL OF HELEN CONVERSE THORPE.

Docket No. 4206.     Submitted November 27, 1925.     Decided March 10, 1926.

Under the evidence, *held*, taxpayer sustained a deductible loss on the sale of property.

*Montgomery B. Angell, Esq.*, for the taxpayer.
*W. Frank Gibbs, Esq.*, for the Commissioner.

Before PHILLIPS and TRAMMELL.

This is an appeal from the determination of a deficiency in income tax for the calendar year 1920, in the amount of $7,562.44, arising from the disallowance by the Commissioner of a deduction of $20,258.38, claimed by the taxpayer, under section 214 (a) (5) of the Revenue Act of 1918, as a loss on the sale of property.

### FINDINGS OF FACT.

1. The taxpayer is an individual, married, and residing with her husband in New York City.

2. In the year 1905 the taxpayer, then living with her father in Philadelphia, became engaged to be married to Warren Thorpe. The latter formerly lived in Philadelphia but had moved to New York City, became employed there, and intended to make it his permanent home. The taxpayer's father, John H. Converse, residing in Philadelphia, was approaching old age, was in ill health and a widower. He therefore greatly desired his daughter to remain near him during his lifetime. As an inducement to the said Thorpe to locate in Philadelphia, he offered to purchase and give to his daughter and her intended husband any residence in Philadelphia they might select and to give Thorpe employment with the Baldwin Locomotive Works, of which he was an official. They accepted the offer, and thereupon they searched Philadelphia for a suitable residence. After investigating a number of available houses, they finally selected a house near the business district within

four blocks of the City Hall. In selecting the house they had in mind the likelihood of an increase in value through expansion of the business district. Although both sides of the street of the block in which the property was selected were occupied by residences, some were already being occupied for business and professional purposes.

Taxpayer and Thorpe were married and the father made the deed to the taxpayer in November, 1906. The father paid the sum of $40,555.16 for the property, and spent in addition $45,464.67 in remodeling and improving it, making a total expenditure of $86,019.83. The remodeling work followed largely the suggestions of the taxpayer and her husband. In reconstructing the building they had in mind a probable future use, and the work was done in such a way that the building would be suitable for a combination office and residence. Both husband and wife had in mind their removal to New York on the death of the father. Upon completion of the house the taxpayer and her husband occupied the premises as their residence continuously until the year 1910, at which time the father died. Upon the death of the father, and following out their original intention, they changed their residence to New York City and placed the property with a broker for rent or for sale. It was promptly rented. The taxpayer at first endeavored to get $100,000 for the property, but, being unable to get this sum, she left it with the broker to sell at $75,000. The price was further reduced to $60,000 and finally to $50,000, at which price it was sold to a doctor on September 1, 1920. The net amount received by the taxpayer was $48,700. During all the period 1910 to 1920 the property was rented or leased without interruption at from $2,250 to $2,500 per year. In all the leases, except one short-term lease, the right to sell was reserved.

3. The building was of brick construction and in sound condition on March 1, 1913. The taxpayer claimed a value as of that date of $70,000. The March 1, 1913, value of the house was $32,000, and the land had a value of $28,000. The property had a total value of $60,000 on that date. A reasonable allowance on account of the exhaustion, wear and tear of the building after March 1, 1913, to September 1, 1920, was 2 per cent, making a total of $4,800.

4. The taxpayer in her original petition claimed a depreciated March 1, 1913, value of $74,853.07, and claimed a loss of $20,258.34. At the hearing the taxpayer amended her petition to allege a March 1, 1913, value of $70,000, denied that depreciation was applicable, and claimed a loss of $21,300. The Commissioner refused to allow any loss, on the ground that the acquisition of the property was not a transaction entered into for profit.

OPINION.

TRAMMELL: In this appeal the Commissioner has disallowed a deduction of a loss resulting from the sale of real property, solely upon the ground that it was originally acquired for residential purposes and that the acquisition was not a transaction originally entered into for profit. Section 214 (a) (4) (5) of the Revenue Act of 1918 provides:

SEC. 214. (a) That in computing net income there shall be allowed as deductions:

\*       \*       \*       \*       \*       \*       \*

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction *entered into for profit*, though not connected with the trade or business; \* \* \*. [Italics ours.]

It is undisputed that since 1910 the property was abandoned as a residence by the taxpayer, she having removed with her husband to New York, and that the property was rented and leased to various parties and was always on the market for sale until 1920, at which time it was sold for a gross sum of $50,000. The evidence is also clear that the property was transferred to the taxpayer by her father as an inducement for her to remain in Philadelphia and be near him, as he was old, in ill health, and a widower. The evidence is also convincing that the taxpayer and her husband intended to live in Philadelphia only so long as the father lived, and that, in selecting the property, they had in mind its future sale at a profit. This is borne out by the fact that they remodeled the house to make it adaptable for professional or other office use, as well as a residence; that is, in such a manner that a doctor, architect, or other professional man could use it as a combination office and residence. They also selected it within a developing business district and within a few blocks of the City Hall, towards which business and professional buildings were moving. The contention of the taxpayer is further substantiated by the fact that, as soon as the father died, they promptly carried out their original intention and moved from Philadelphia to New York put the house on the market, and received a revenue from it until September 1, 1920, when it was sold to a doctor.

We are of the opinion that a predominating factor in the selection of the premises was the prospect of future profit, either from the sale or the conversion into business property. There was a definite course of action directed toward that end. The expectation of profit was the prevailing factor in the final selection and mode of construction of the particular building. We are of the opinion that this

transaction was entered into for profit, within the purview of section 214 (a) (5) of the Revenue Act of 1918.

The proper basis for ascertaining the loss should be the March 1, 1913, value, since the value on that date was lower than the cost, *United States* v. *Flannery*, 268 U. S. 98, the total cost being $86,019.83 and the March 1, 1913, value having been found to be $60,000. So, also, since the property was held subsequently as a business property, the March 1, 1913, value must be depreciated, whether the taxpayer claimed a deduction for such depreciation in prior income-tax returns or not. *Appeal of Even Realty Co.*, 1 B. T. A. 355; *Appeal of Esther Firestone*, 2 B. T. A. 309. We have found a reasonable rate of depreciation to be 2 per cent. Applying this rate to the value of the building for the period March 1, 1913, to September 1, 1920, we get a total depreciation of $4,800, leaving a net basis of computing a loss at $55,200. Summarizing the transaction, the resulting loss is as follows:

| | |
|---|---:|
| March 1, 1913, value | $60, 000 |
| Less depreciation | 4, 800 |
| Net value | 55, 200 |
| Net sale price | 48, 700 |
| Loss sustained | 6, 500 |

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*