JAMES E. AUSTIN AND ELIZABETH G. AUSTIN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77594. Filed October 31, 1960.

*Ben A. Matthews, Esq.,* and *Vincent P. Uihlein, Esq.,* for the petitioners.

*Douglas D. Robertson, Esq.,* for the respondent.

ARUNDELL, *Judge:* Respondent determined a deficiency in income tax for the calendar year 1955 in the amount of $7,043.

Petitioners allege that respondent's determination is based upon the following error: "Disallowance of loss on sale of house, supporting buildings and forty acres of land—$32,229.00."

#### FINDINGS OF FACT.

The stipulated facts are so found and are incorporated herein by this reference.

Petitioners are husband and wife whose joint income tax return for the taxable year 1955 was filed with the director of internal revenue for the district of Connecticut. Since August 1954 petitioners have resided in Wilton, Connecticut, within commuting distance of New York City.

Attached to their return, petitioners claimed, under the heading of "Other Business Deductions," a "Loss upon sale of improved real property with 40 acres located in Millbrook, New York" of $30,470. They also claimed three other items totaling $1,759, thus making the total amount of "Other Business Deductions" claimed in their return $32,229. This total amount [1] was disallowed by the respondent and, in a statement attached to the deficiency notice, the respondent said:

It is determined that the deduction of $32,229.00 claimed in your return for the taxable year ended December 31, 1955, as resulting from the sale of improved

---

[1] In their brief petitioners state that the three items totaling $1,759 "are not now disputed."

property located in Millbrook, New York, is not deductible for the reasons that (1) if in fact you did sustain a loss in this transaction, such loss is personal in nature and deduction of same is prohibited by Section 262 of the Internal Revenue Code of 1954; and (2) you have failed to establish that you sustained any loss in the sale of the property involved.

At all times pertinent hereto, petitioner James E. Austin (hereinafter sometimes referred to as petitioner) was a director, an elected officer, and general counsel of the DeLaval Separator Company (hereinafter sometimes referred to as Separator) and DeLaval Steam Turbine Company (hereinafter sometimes referred to as Turbine).

Separator is a corporation with its plant at Poughkeepsie, New York. Turbine is a corporation with its plant at Trenton, New Jersey. In and prior to 1949, the DeLaval corporations occupied joint offices on three floors of the Chemical Bank Building in New York City. One of these offices was the office of petitioner.

In and prior to 1949, petitioners resided with their children in Riverside, Connecticut, within commuting distance of New York City.

Sometime during 1947 petitioner was advised by the then president of Separator and chairman of Turbine's board that petitioner would probably have to move his residence to the vicinity of Poughkeepsie, New York. At that time the board of directors of Separator was studying a plan to build an office building in Poughkeepsie to house its own employees and also the joint executive officers of the two companies. This plan was studied for a period of 2 years. In January 1949, the board appointed a committee to complete plans and let contracts for the construction of the building. Construction of the building was commenced during 1950 and completed in August 1951.

The decision to remove the executive offices of the DeLaval corporations to Poughkeepsie, although acquiesced in, was against the better judgment of some of the officers of those corporations. Because of this division of opinion among the management, petitioner realized that the move to Poughkeepsie might later be reversed if and when the minority should gain control of the management. In the meantime, petitioner felt that in order to hold his position with the companies he would have to move his residence temporarily to the vicinity of Poughkeepsie.

Petitioner determined that, in seeking a place near Poughkeepsie, he would select a property which would be a venture from which he could ultimately make a profit and which, in the meanwhile, could be used as a temporary residence for his family. He sought such a property for 18 months until he finally found what he thought was a very good bargain from a profit standpoint, consisting of approximately 220 acres, with a house, cottage, and some small buildings, about 17 miles from Poughkeepsie in the small town of Millbrook, New York.

In August 1950 petitioners contracted to purchase the Millbrook

property for $28,000, plus some additional costs for closing and adjustments of $550, thus making the total original cost $28,550.

Upon purchasing the Millbrook property, petitioners made immediate arrangements for substantial capital improvements, renovations, and land additions of approximately 10 acres, costing altogether $44,250, which brought the total cost of the Millbrook property to $72,800. Those improvements and additions were not completed until sometime in 1952 or 1953.

In November 1950, shortly after contracting to purchase the Millbrook property, petitioners sold the home in which they were then living in Riverside, Connecticut, and moved into a rented house in Riverside.

At the annual meetings of the DeLaval corporations held in April 1951, newly elected officers decided that the principal officers of the companies (including petitioner) must have their offices in New York City. Petitioner was thereupon advised to attend the New York office daily and to establish his residence convenient to New York City, close enough for him to commute. Petitioners moved to the Millbrook property on May 30, 1951. Petitioner's family continued to reside in the Millbrook property until August 1954 when the entire family moved to Wilton, Connecticut. During the period his family was in Millbrook, petitioner, except on such occasions as his duties took him to Poughkeepsie, rented accommodations at the University Club in New York City for 4 nights a week, Monday through Thursday. He was with his family in Millbrook the other 3 nights. Within a week after moving to Millbrook petitioners put the Millbrook property up for immediate sale with the leading real estate agent in Millbrook. In April 1952, petitioners purchased the previously mentioned 10 adjoining acres to round out the Millbrook property. The entire Millbrook property was on the market for sale at all times after June 2, 1951, and for rent at all times after July 1952, when the alterations and repairs were substantially completed. Advertisements were placed in newspapers, including the Wall Street Journal, New York Times, the Herald-Tribune, Washington Post, Business Letter in Los Angeles, and in newspapers in Chicago and San Francisco, and in national farm agency brochures such as the Strout Agency and Batson Farm Agency. While at the Millbrook property, petitioner Elizabeth G. Austin showed the house to approximately 50 prospective purchasers and tenants.

On March 18, 1955, petitioners sold a part of the Millbrook property consisting of the main house, adjacent buildings, and 40 acres for $31,500. The actual cost of the part sold was $60,000.

Petitioners' expenses of the 1955 sale aggregated $3,157.

Depreciation allowed petitioners in prior years on the property sold in 1955 aggregated $1,187.

Petitioners sustained a loss of $30,470 on the sale of a part of the Millbrook property on March 18, 1955. No part of this loss was compensated for by insurance or otherwise.

The balance of the Millbrook property (cottage, small buildings, and approximately 190 acres), with a cost basis of $12,800, has been at all times and still is on the market for sale.

The Millbrook property was purchased by petitioners primarily for a residence and secondarily to make a profit.

The loss of $30,470 from the sale of a part of the Millbrook property was not incurred in a trade or business or in a transaction entered into for profit.

OPINION.

We are satisfied that petitioners have proven that they sustained a loss of $30,470 on the sale in 1955 of a part of the Millbrook property. Thus, respondent's second reason given in the statement attached to the deficiency notice for disallowing the loss deduction claimed in petitioners' return is disapproved. We hold that the loss was sustained.

We are not satisfied, however, that the evidence, taken in its entirety, establishes that the loss was not "personal in nature" and therefore prohibited by section 262 of the Internal Revenue Code of 1954.[2] Thus, we approve respondent's first reason for disallowing the loss.

In order for petitioners to have prevailed, it would have been necessary for them to have established that the loss was either "incurred in a trade or business" or "in any transaction entered into for profit" as those phrases are used in section 165(c), I.R.C. 1954. The applicable provisions of section 165 and of the regulations thereunder are in the margin.[3]

---

[2] SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

[3] Internal Revenue Code of 1954:

SEC. 165. LOSSES.

(a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \* \* \*

(c) LIMITATION ON LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a) shall be limited to—

    (1) losses incurred in a trade or business;

    (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; \* \* \*

\* \* \* \* \* \* \*

(f) CAPITAL LOSSES.—Losses from sales or exchanges of capital assets shall be allowed only to the extent allowed in sections 1211 and 1212.

Income Tax Regulations:

Sec. 1.165–1 Losses. (a) Allowance of deduction. Section 165(a) provides that, in computing taxable income under section 63, any loss actually sustained during the taxable year and not made good by insurance or some other form of compensation shall be allowed as a deduction subject to any provision of the internal revenue laws which prohibits or limits the amount of deduction. This deduction for losses sustained shall be taken in accordance with section 165 and the regulations thereunder.

\* \* \* \* \* \* \*

It is clear that petitioners' activity in buying and selling real estate did not amount to "a trade or business" as that term is used in section 165 (c) (1). Prior to the purchase of the Millbrook property in 1950, petitioners had purchased in 1945 a residence in Riverside (the Cochran property) which they sold in December 1946 at a profit of approximately $5,000. In November 1946 they purchased another residence in Riverside, consisting of a house, cottage, and 6½ acres, for approximately $21,500. They sold the house and one-half acre in November 1950 for approximately $19,215. In December 1950 they purchased for $1,750 one-half an acre in Riverside to provide a road-way to the remaining Riverside property, and in the same month they sold the cottage on the Riverside property and 3 acres for approximately $14,285. They purchased their present residence in Wilton in July 1954 for approximately $21,750 and in November of that year they sold the remaining 3½ acres in Riverside for about $14,000.

Petitioner did not hold himself out as being engaged in the real estate business. At all times pertinent hereto, he was a director, elected officer, and general counsel of the DeLaval corporations, and assistant to the chairman of the board of Turbine and to the president of Separator. These duties occupied his full time. Petitioner Elizabeth G. Austin, while residing on the Millbrook property, showed the property to approximately 50 prospective purchasers or renters.

In order to classify as being in the real estate "trade or business" it was incumbent upon petitioners to establish that for the purpose of making a livelihood, they held themselves out as being in the real estate business, and that they also devoted a substantial portion of their time to such activity. Cf. *Snyder* v. *Commissioner*, 295 U.S. 134. The evidence does not point in that direction. We hold that the loss in question was not one incurred in a trade or business.

Whether the loss was "incurred in any transaction entered into for profit" depends upon whether our ultimate finding is (1) that the

(c) *Amount deductible.* * * *

* * * * * * *

(3) A loss from the sale or exchange of a capital asset shall be allowed as a deduction under section 165(a) but only to the extent allowed in section 1211, relating to the limitation on capital losses, and section 1212, relating to the capital loss carryover, and in the regulations under those sections.

* * * * * * *

(e) *Limitation on losses of individuals.* In the case of an individual, the deduction for losses granted by section 165(a) shall, subject to the provisions of section 165(c) and paragraph (a) of this section, be limited to—

(1) losses incurred in a trade or business;

(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; * * *

* * * * * * *

Sec. 1.165–9 *Sale of Residential Property.* (a) Losses not allowed. A loss sustained on the sale of residential property purchased or constructed by the taxpayer for use as his personal residence and so used by him up to the time of the sale is not deductible under section 165(a).

Millbrook property was purchased by petitioners *primarily* for the purpose of deriving a gain upon the sale thereof, or (2) whether it was purchased *primarily* for a residence. See *Harold K. Meyer*, 34 T.C. 528. Petitioners contend that the predominating factor in the selection of the Millbrook property was the prospect of future profits and that they come within the ambit of such decisions as *Helen Converse Thorpe*, 3 B.T.A. 1006; *Sidney W. Sinsheimer*, 7 B.T.A. 1099; *John N. Hughes*, 8 B.T.A. 206; *Henry J. Gordon*, 12 B.T.A. 1191; *W. W. Holloway, Administrator*, 19 B.T.A. 378; *Marjorie G. Randall*, 27 B.T.A. 475; and *Westmore Willcox*, 20 T.C. 305. On the other hand, respondent contends that petitioners bought the Millbrook property primarily for a residence in case petitioner's office with the DeLaval corporations was moved to Poughkeepsie, as was then under contemplation. The then president of Separator and chairman of Turbine's board had already bought a home in Poughkeepsie with such a move in mind. Respondent relies upon such cases as *Richard P. Koehn*, 16 T.C. 1378; *Gilbert Wilkes*, 17 T.C. 865; *Seletos* v. *Commissioner*, 254 F. 2d 794 (C.A. 8, 1958), affirming a Memorandum Opinion of this Court; and *Harold K. Meyer, supra*.

As we said in the *Meyer* case, we do not question the good faith of petitioners' testimony that they fully expected to make a profit on any ultimate sale of the Millbrook property. But this was not the predominating factor. We doubt if petitioners would ever have considered purchasing property in the vicinity of Poughkeepsie if it were not for the contemplated move of the offices of the DeLaval corporations to that city. That was the predominating factor which caused petitioners to purchase the Millbrook property. Furthermore, the large amount of money (some $44,250) spent by petitioners in renovations after they purchased the property (for $28,550) tends to show that the primary reason for acquiring the property was to acquire a convenient home for themselves and their five children. In April 1951, when it became definitely known that the offices of the principal officers of the two corporations (including petitioner) would remain in New York City, petitioner told the contractor who was making the renovations "to cut these repairs off immediately." This is but another indication that the primary reason for acquiring the Millbrook property was to acquire a residence.

The fact that petitioner thought the proposed move of the offices to Poughkeepsie might turn out to be temporary and thus make his residence in that vicinity temporary is of little help to petitioners in view of our holding in the *Meyer* case. In the *Meyer* case, the taxpayer *knew* when he bought the Chester Hills house that his residence therein would be temporary. Our finding there was: "Petitioner bought the house primarily for a residence in which to

reside until his other house then under construction was completed and ready for occupancy. Petitioner expected to sell this Chester Hills residence later at a profit."

The cases relied upon by petitioner are all distinguishable from the instant case on their facts. The *Thorpe* case was a "conversion" case, namely, where the initial acquisition was primarily for residence but was later abandoned as a residence and appropriated to a business use. Cf. *Heiner* v. *Tindle*, 276 U.S. 582. Since petitioners in their brief say they "do not claim a conversion of their property," we need not further pursue that angle. In the *Sinsheimer* case, we specifically found that the taxpayer there "did not construct the house as a residence" but "built with the view of selling at a profit." We can make no such finding here. Our finding in *Hughes* was that the property was purchased "to sell at a profit and not to use as a home." Our finding in *Gordon* was that while the taxpayer was constructing the property there in question he "had no intention of moving into the house, but was building it in order to dispose of it at a profit." Likewise, in *Holloway* we found "The property was bought primarily as an investment and secondarily to live in." The *Randall* case was distinguished in *Meyer, supra.* Finally, in the *Willcox* case we said in our opinion that the properties there in question "were not bought for the purpose of occupying them as a residence but were bought solely for the purpose of holding them for profit."

In the instant case, one of our ultimate findings is that petitioners purchased the Millbrook property primarily for a residence and secondarily to make a profit. In view of this and other findings, we sustain the respondent's determination. *Harold K. Meyer, supra.*

*Decision will be entered for the respondent.*