Harry C. Welch and Jill Welch, v. Commissioner.
Welch v. Commissioner
Docket No. 3203-62.
United States Tax Court
T.C. Memo 1964-42; 1964 Tax Ct. Memo LEXIS 294; 23 T.C.M. (CCH) 243; T.C.M. (RIA) 64042; February 25, 1964
William H. Kinsey, Board of Trade Bldg., Portland, Ore., for the petitioners. John D. Picco, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The respondent determined a deficiency in the petitioners' income tax for the calendar year 1955 in the amount of $5,005.94. The only issue for decision is whether, in computing the petitioners' net operating loss deduction allowable as a carryback to 1955, the loss sustained by petitioners on the sale of their former residence in 1958 constituted a loss on property used in petitioners' trade or business which would be deductible *295 under section 172(d)(4)(A) of the Internal Revenue Code of 1954. All other issues have been settled by the parties. Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioners are husband and wife with residence in El Segundo, California. They filed a joint income tax return for the year 1955 with the district director of internal revenue for the District of Los Angeles, California. Harry C. Welch (hereinafter referred to as the petitioner) has been a lumberman for many years. Sometime around 1951 petitioner moved to Reno, Nevada, and was approached by his brothers with regard to establishing a wholesale lumber business. The business, known as Nevaco Lumber Company, was established and petitioner was the principal partner. Soon after the establishment of the business, petitioner purchased a house in Reno, Nevada, at a cost of $48,100. Immediately following the purchase, petitioner proceeded on improvement projects, including installation of a covered swimming pool, an adjoining party room with kitchen facilities, and substantial rock work and landscaping in the pool area, for a total additional cost of $56,004.09. *296 Although the petitioner acquired the house for the principal purpose of using it as a residence, he frequently used it to entertain lumber purchasers, wholesalers and industrial users. When petitioner was away, the lumber company's accountant and sales manager were permitted to entertain customers at the house. Sometime in 1954, petitioner and his brothers acquired certain lumbering property in Idaho. As a result of this acquisition, they decided to move the company business to Idaho and terminate their lumber interests in Nevada. Thereafter, although retaining financial interests in lumber and related businesses in Oregon and Idaho, petitioner became active in various other business enterprises in California. Petitioner, however, continued to reside in and occupy the Reno house until June 1955. In June 1955 petitioner moved to El Segundo, California, and has resided there continuously ever since. Before leaving Reno, petitioner made many attempts to sell or lease his home. He spoke to several people and advertised in various news media. After petitioner moved to California, he listed the property with several brokers on a nonexclusive basis. Later petitioner had a large 16-foot *297 billboard erected on the property which stated that the house was for sale or lease. Efforts to rent the property were unsuccessful and the premises remained unoccupied and unrented until sold in 1958. In their income tax returns for 1956 and 1957 the petitioners claimed depreciation deductions of $3,000 per year plus other expenses incurred in the maintenance of the Reno property. On January 3, 1958, the petitioners sold the Reno property for a stated sales price of $91,079.60. Petitioners' cost basis in and the fair market value of the Reno property as of June 1955 were $104,104.09 and $99,468, respectively. As part of the payment from the sale, petitioners took in trade a residential property located at Beaverton, Oregon, at an agreed price of $40,000. On August 19, 1958, petitioners sold the Beaverton property for $24,000. In their income tax return for 1958 petitioners reported the sale of the Reno and Beaverton properties and claimed the following losses with respect thereto: Reno Residence
Sales price of Reno house
$91,079.60
Cost
$104,104.09
Depreciation taken
6,000.00
98,104.09
($ 7,024.49)
Expense of sale
2,907.72
Loss per return
($ 9,932.21)
Beaverton Residence
Sales price of Beaverton house
$24,000.00
Cost (agreed price)
$ 40,000.00
Depreciation taken
900.00
39,100.00
($15,100.00)
Expense of sale
1,482.76
Loss per return
($16,582.76)
*298 Subsequent developments disclosed that the stated price of the Beaverton property was inflated in the amount of $16,000 so that the loss on the sale of the Reno property was in fact greater than was reported in petitioners' return. The parties agree that petitioners sustained no loss on the Beaverton property and that the loss sustained by them on the sale of the Reno property in 1958 was in the amount of $17,378.88. On their amended income tax return for 1958 the petitioners claimed a net operating loss deduction of $16,423.04. Respondent determined that the loss sustained by petitioners on the sale of the Reno property was a nonallowable loss from the sale of a personal residence and that as a result there is no net operating loss to be deducted. Opinion The resolution of the net operating loss issue in this case depends upon the character of the Reno property at the time of its sale in 1958, i.e., was it residential property having a purely personal use, as respondent contends, or was it property used in a trade or business, as petitioners contend. Since the original acquisition here was clearly a personal one, [1] the burden is on the petitioners to prove that the personal *299 use was terminated and that the premises were thereafter appropriated to a business use. Warren Leslie, Sr., 6 T.C. 488 (1946); Allen L. Grammer, 12 T.C. 34 (1949). It is now recognized that a mere listing, whether exclusive or nonexclusive, of abandoned residential property for rent or sale does not constitute an appropriation of premises to a business use. Morgan v. Commissioner, 76 F. 2d 390 (C.A. 5, 1935), denying a petition for review of a Memorandum Opinion of the Board of Tax Appeals, certiorari denied 296 U.S. 601 (1935); Rumsey v. Commissioner, 82 F. 2d 158 (C.A. 2, 1936), affirming a Memorandum Opinion of the Board of Tax Appeals, certiorari denied 299 U.S. 552 (1936); Jones v. Commissioner, 152 F. 2d 392 (C.A. 9, 1945), affirming a Memorandum Opinion of this Court; E. R. Fenimore Johnson, 19 T.C. 93 (1952). In addition, the fact that the taxpayer gave up the residence because of health, Morgan v. Commissioner, supra, because the property was unsuitable, Jones v. Commissioner, supra, or because of a change in location of employment, Allen L. Grammer, supra, *300 and was unlikely to use it as a residence again, Warner v. Commissioner, 167 F. 2d 633 (C.A. 2, 1948), affirming a Memorandum Opinion of this Court, has been held insufficient to show that the residential character of the property has been terminated. The rationale of the courts in such cases is that the voluntary act of abandonment is subject to revocation at any time by the taxpayer and that as a result the taxpayer is free to resume residential usage by a mere change of mind. Rumsey v. Commissioner, supra; Morgan v. Commissioner, supra.
In the instant case the record establishes that the petitioner tried to rent or sell the Reno property by the use of various advertising media and real estate brokers and that the petitioner *301 was unable to rent the property prior to its sale in 1958. The petitioner introduced no evidence to show that the Reno property was remodeled so as to convert it into a business property, see Rumsey v. Commissioner, supra, or that the Reno property was in any other manner irrevocably committed after 1955 to a business use. Under such circumstances, we are unable to conclude that the character of the Reno property changed to a business use prior to its sale in 1958. Accordingly, we hold that the loss sustained by petitioners upon the sale of the Reno property was a nondeductible personal loss. Decision will be entered for the respondent. Footnotes
1. While petitioner may have used the Reno property for business entertaining purposes to some extent, we have found that the primary purpose for its acquisition was for use as a residence. Such being the case, its character was primarily personal in nature. See and compare Harold K. Meyer, 34 T.C. 528 (1960); James E. Austin, 35 T.C. 221 (1960), affd. 298 F. 2d 583↩ (C.A. 2, 1962).