DONALD H. AND MARY LOU ROEHNING, Petitioners v. COMMISSION OF INTERNAL REVENUE, Respondent
ROEHNING v. COMMISSION OF INTERNAL REVENUE
Docket No. 24894-86
United States Tax Court
T.C. Memo 1989-345; 1989 Tax Ct. Memo LEXIS 344; 57 T.C.M. (CCH) 978; July 19, 1989
Donald H. Roehning and Mary Lou Roehning, pro sese. Mary E. (Betsy) Pierce, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined a deficiency in petitioners' Federal income tax of $ 3,768 for the taxable year 1982 and an addition to tax for fraud against petitioner Donald H. Roehning only, which respondent has conceded is inapplicable. In his answer, respondent determined an addition to tax for negligence against both petitioners as an alternative to his fraud allegations. After concessions by the parties, the issues remaining are: (1) whether petitioners realized income from two real estate partnerships; (2) whether petitioners realized gains from stock transactions; (3) whether petitioners sustained deductible losses from a vacation club time-sharing arrangement; and (4) whether petitioners are liable for the addition to tax for negligence pursuant to sections 6653(a)(1) [1] and 6653(a)(2). *346 FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners Donald H. and Mary Lou Roehning resided in Lakeville, Minnesota at the time they filed their petition. In 1982, petitioner Donald Roehning ("Roehning") was employed by Thermo-King in Bloomington, Minnesota, and was also self-employed as an electrical contractor. In 1982, Roehning was a partner in SS & R Properties, a real estate partnership. Petitioners reported a $ 4,750 ordinary loss from SS & R Properties on their 1982 Federal income tax return. SS & R Properties filed a final partnership return (Form 1065), dated March 31, 1983, with a Schedule K-1 for Roehning attached showing that Roehning's distributive share of partnership items was $ 989 in section 1231 losses. Petitioners filed their 1982 return before receiving a copy of the Schedule K-1. The IRS audited SS & R Properties in 1984, and adjusted its 1982 return to reflect a section 1231 gain. Based on the results of SS & R Properties' audit, respondent determined that Roehning's distributive share of the section 1231 gain was $ 774. In 1983, petitioners reported a loss from SS & R Properties on their Federal income tax return.
*347 Roehning also was a partner in Enterprise II, a real estate partnership, in 1982. During 1982, Enterprise II wrote checks totaling $ 1,044 to Roehning, all of which were deposited to petitioners' checking account. Petitioners reported a $ 1,100 ordinary loss from Enterprise II on their 1982 return. Enterprise II filed a partnership return (Form 1065) for 1982 with a Schedule K-1 for petitioner attached showing that Roehning had $ 1,668 in ordinary income and $ 38 in long-term capital gain from Enterprise II. Petitioners received their copy of the Schedule K-1 after filing their 1982 return. The IRS audited Enterprise II in 1984, and adjusted its 1982 return by increasing the partnership's ordinary income and section 1231 gain. Based on the results of the Enterprise II audit, respondent in this case determined that Roehning's distributive share of the increased amounts was $ 1,684 of ordinary income and $ 6,455 of section 1231 gain. Roehning sold his interest in Enterprise II sometime after December 31, 1982, for approximately $ 2,000. In 1983, petitioners reported a loss from Enterprise II on their Federal income tax return. Roehning, together with other partners in SS *348 & R Properties and Enterprise II, filed suit against the common managing partner of both partnerships in 1980. They abandoned the lawsuits sometime after 1982. Petitioners reported a $ 2,609 short-term capital loss from stock put and call transactions in N.L. Inc., in 1982. Petitioners calculated the loss as follows: $ 14,676 sales price less $ 17,376 cost. Petitioners' record of the transactions is a stock account summary sheet. The summary sheet lists five transactions. In a "gain/loss" column, three of the transactions are identified "'81" and two are identified "'82." The two "'82" transactions are $ 11,154.36 gain and $ 7,298.51 loss. The transactions identified "'81" are $ 4,355.72 gain, $ 4,047.61 loss and $ 6,465.27 loss. In 1980, petitioners paid $ 9,000 to join the Paradise Palms Vacation Club in Honolulu, Hawaii, a time-sharing arrangement which entitled petitioners to live in one of the Club's one-bedroom units for two weeks each year. Petitioners visited the club once, in 1980. Petitioners bought the two weeks per year time-sharing unit both to use themselves and to rent out, but petitioners were unsuccessful in renting their unit in 1981. In 1982, the Paradise *349 Palms Vacation Club filed for reorganization pursuant to Chapter 11 of the United States Bankruptcy Code. Petitioners reported a $ 2,150 loss from the Club in 1982. In 1982, petitioners deducted $ 72 for bank service charges on their return on both Schedule A and Schedule C. Petitioners' bank account was not debited for any service charges in 1982. Petitioners conceded that they were not entitled to the deduction. OPINION The first issue we must decide is Roehning's distributive share of income, gain or loss in 1982 from two real estate partnerships, SS & R Properties and Enterprise II. Petitioners reported ordinary losses from both partnerships in 1982. The Schedules K-1 that the partnerships issued after petitioners filed their return show a loss from one of the partnerships, different than the loss petitioners reported, and a gain from the other. Respondent adjusted the amounts of Roehning's distributive share of income, gain and loss for 1982 from the partnerships based on 1984 audits of SS & R Properties and Enterprise II. Respondent contends that Roehning's distributive shares of income determined in the audits are includable in petitioners' 1982 income. Petitioners *350 do not challenge the results of the 1984 audits; petitioners argue that they never received any return on the partnership investments and therefore could not have had any income or gain from the partnerships in 1982. In support of their argument, petitioners point out that Roehning sued the managing partner for mishandling his investments. Section 702 requires each partner in a partnership to take into account his distributive share of partnership income, gain and loss. Each partner is taxable on his distributive share of partnership income whether received or even known to exist. Sec. 1.702-1(a), Income Tax Regs.; Beck Chemical Equipment Corp. v. Commissioner, 27 T.C. 840, 855 (1957). Consequently, if Roehning did not receive his distributive shares of partnership income, petitioners are, nonetheless, taxable on those amounts. Sec. 702; sec. 1.702-1(a), Income Tax Regs.
Petitioners did not introduce any evidence of partnership income, gain or loss or of Roehning's distributive share of such items in either partnership. Petitioners have not met their burden of proving that respondent's determination of their distributive shares of income and gain from the partnerships *351 was incorrect. We hold that petitioners are taxable on Roehning's distributive share of income and gain from the partnerships in the amounts respondent determined. Petitioners also suggest that Roehning's partnership interests became worthless in 1982. A taxpayer may deduct losses pursuant to section 165 if his partnership interest becomes worthless during the taxable year. See Gannon v. Commissioner, 16 T.C. 1134, 1139 (1951); Zeeman v. United States, 275 F. Supp. 235 (S.D.N.Y. 1967), affd. and remanded on other issues 395 F.2d 861 (2d Cir. 1968). The taxpayer must show the completed transactions and particular events that establish that the loss was sustained. Sec. 1.165-1(b), Income Tax Regs.
Petitioners have not introduced any evidence, however, to show that Roehning's interests in either partnership became worthless in 1982. Roehning sold his interest in Enterprise II sometime after 1982 for approximately $ 2,000. Petitioners also received at least $ 1,044 from Enterprise II during 1982. They reported losses from both partnerships again in 1983, and Roehning did not abandon his lawsuits against the managing partner until *352 after 1982. Petitioners have not met their burden of proving worthlessness in 1982 and may not deduct any losses pursuant to section 165. The second issue we must decide is whether petitioners realized gains from stock put and call transactions. Petitioners stipulated that a stock account summary sheet listed the relevant transactions. Petitioners calculated their loss for 1982 with the information on the summary sheet. The summary sheet, however, contains gains and losses from transactions identified "'81" and "'82." The sum of the gain and loss from the two "'82" transactions is a $ 3,855.85 gain, respondent's determination. Petitioners did not present any evidence to show that the three transactions identified "'81" on the summary sheet actually occurred in 1982. In fact, Roehning testified that he did not understand the summary sheet. Petitioners did not meet their burden of proof. We sustain respondent's determination on this issue. The next issue before us is whether petitioners held their time-sharing property for personal use. In 1980, petitioners purchased a time-sharing interest in a vacation club in Hawaii. Petitioners lost their money when the club declared bankruptcy *353 in 1982. Respondent contends that their loss is personal and nondeductible. Losses generally are deductible in the year sustained, section 165(a), but an individual may not deduct a personal loss. Secs. 262, 165(c). An individual's loss incurred in a transaction entered into for profit, however, is deductible. Sec. 165(c)(2). The standard for determining whether petitioners bought the time-sharing interest for profit is whether they purchased the property primarily for the purpose of realizing a gain rather than for personal reasons. See Austin v. Commissioner, 35 T.C. 221, 226 (1960), affd. 298 F.2d 583 (2d Cir. 1962). Roehning testified that they intended to use their unit themselves in some years, rent the unit in other years, and sell it later at a profit. Petitioners did not offer any evidence of profit intent other than Roehning's testimony. The unit purchased was offered by a Hawaiian vacation club. Petitioners visited the club one time before the corporation declared bankruptcy. They never rented the unit. We believe petitioners acquired their time-share interest for personal recreational reasons and not primarily for profit. We *354 hold that petitioners' losses were personal and, therefore, not deductible. Sec. 165(c). The final issue we must decide is whether petitioners are liable for the addition to tax for negligence. Respondent raised the negligence addition in his answer and therefore has the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure. Respondent argues that the following points evidence petitioners' negligence: (1) incorrect reporting of distributive shares of partnership gain and income, (2) claiming losses on stock transactions that resulted in gain, and (3) twice deducting $ 72 in bank charges that they did not pay. We hold that respondent has not met his burden of proving negligence. Section 6653(a)(1), as in effect for 1982, provided for an addition to tax equal to five percent of an underpayment if any part of the underpayment was due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposed a further addition to tax equal to 50 percent of the interest payable on that portion of the underpayment of tax attributable to negligence or intentional disregard of rules or regulations. For purposes of section 6653(a), negligence is defined *355 as lack of due care or failure to do what a reasonable and prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners reported losses from two real estate partnerships that did not match the Schedules K-1 that the partnerships issued to Roehning. Respondent asserts the negligence addition with respect to the underpayment resulting from petitioners' reported losses as compared with the amounts the partnerships reported on the Schedules K-1. Roehning testified that petitioners filed their return prior to receiving the partnership Schedules K-1. Respondent points out that petitioners did not try to obtain the information from the partnerships prior to filing their returns. Roehning, however, had filed a lawsuit against the managing partner. Respondent, who has the burden of proof, did not introduce any evidence that petitioners had or could have obtained the information from the partnerships prior to filing their return. Petitioners reported a $ 2,609 capital loss from stock transactions in 1982. The sum of all gains and losses on petitioners' record of the transactions is a $ 2,301.31 loss. The sum of the two *356 "'82" transactions on the summary sheet is a $ 3,855.85 gain. The summary sheet is difficult to follow. Roehning testified that he didn't really understand the summary sheet and he "added and subtracted" the numbers and came up with a loss. Respondent did not introduce any other evidence of the transactions. Petitioners also twice deducted $ 72 for bank service charges, but their bank records show that petitioners' account was not debited for any charges. Petitioners conceded that they were not entitled to the deduction. The only evidence respondent introduced to prove negligence was that petitioners deducted $ 72 on Schedule A and Schedule C of their 1982 return. The minor overstatement of a deduction does not on this record justify the imposition of the negligence addition. We hold that respondent has not met his burden of proving petitioners were negligent in reporting the partnership losses, the stock loss, or the bank service charge deductions. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect for 1982, unless otherwise indicated.↩