GEORGE T. DOERRIES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Doerries v. Commissioner
Docket No. 32366-88
United States Tax Court
T.C. Memo 1991-396; 1991 Tax Ct. Memo LEXIS 461; 62 T.C.M. (CCH) 484; T.C.M. (RIA) 91396; August 13, 1991, Filed *461 Decision will be entered under Rule 155. Nick A. Moschetti Jr., for the petitioner. J. Michal Nathan, for the respondent. RUWE, Judge. RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies and additions to tax in petitioner's Federal income taxes as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
Sec. 6661
1984
$ 54,349.00
$ 2,717.00
50 percent of
$ 5,933.00
the interest due
on $ 23,370.00
1985
$  1,152.00
$   58.00
50 percent of  --
the interest due
on $ 1,152.00
After concessions by the parties, the issues for decision are: (1) Whether petitioner is entitled to a deduction for a loss incurred on the disposition of real property; (2) whether petitioner is entitled to deduct, *462 under either section 162(a) or section 212, mortgage interest, property taxes, and other expenditures incurred with respect to real property; (3) whether petitioner is liable for the 5-percent addition to tax under section 6653(a)(1) for negligence or intentional disregard of rules or regulations; (4) whether respondent's post-trial Motion for Leave to File Amendment to Answer regarding additions to tax should be granted; (5) whether petitioner is liable for additions to tax under section 6653(a)(2); and (6) whether petitioner is liable for the addition to tax under section 6661 for substantial understatement of income tax. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Reno, Nevada, at the time he filed his petition in this case. Petitioner timely filed his Federal income tax returns for each of the taxable years in issue. In 1980, petitioner became interested in purchasing property in a subdivision known as Lakeview Estates in Carson City, Nevada. Lakeview Estates had previously been part of a planned development, which was originally intended *463 to include a golf course and a tennis club. The development, as initially planned, failed. Prior to abandoning its initial plan, the developer constructed a "clubhouse" for the golf course and tennis club. It was the clubhouse and the lot upon which it was situated that petitioner was interested in purchasing. The clubhouse was a single-story 1400 square-foot structure which was functionally divided into 3 areas. At one end of the building there was a large room for entertaining which contained a fireplace and a bar. In the center of the structure were men's and women's locker rooms, and at the other end of the building was a small apartment. This small apartment was originally intended as quarters for a tennis pro. Petitioner was informed that the clubhouse was for sale subject to the requirement that it be remodeled in order to meet minimum square footage requirements. The seller also disclosed that the property had been damaged by a fire. It was further represented to petitioner that the damage was limited to a small alcove off the large room, that had since been repaired. On June 22, 1980, petitioner entered into a contract to purchase the property. The contract provided *464 that petitioner took the property "as is." The contract further specified that the required remodeling had to be done within 3 years. This was the first time petitioner had ever purchased real estate. The purchase price was $ 140,000. Petitioner made a $ 20,000 downpayment and obtained a loan for the remaining $ 120,000. Petitioner moved into the clubhouse in 1980 and used it as his principal residence until March 1984. Petitioner listed the property as his personal residence on his Federal income tax returns for the years 1980, 1981, 1982, and 1983. Petitioner claimed home mortgage interest and real estate taxes for the property as itemized deductions on Schedule A of his returns in each of those years. On September 22, 1983, more than 3 years after petitioner began using the property as his personal residence, he obtained remodeling plans from a residential designer he had hired. The plans provided for remodeling of the original clubhouse, as well as the construction of a detached garage. In order to finance the remodeling, petitioner applied to the Valley Bank of Nevada (the bank) for a construction loan. In making his loan application, petitioner told the loan officer *465 that he intended to use the remodeled property as his personal residence. The bank had petitioner's property appraised. The appraiser estimated the property's value upon completion of remodeling at $ 310,000. On November 23, 1983, petitioner obtained a construction loan from the bank in the amount of $ 180,000 for a term of 6 months. Part of the loan proceeds were used to pay off the original loan of $ 120,000. The balance of the proceeds was used to finance the remodeling. Remodeling began in March 1984, at which time petitioner moved his residence from the clubhouse to a rented condominium in Reno, Nevada. He maintained his residence at this condominium from March 1, 1984, through October 31, 1984. In May 1984, during the course of the remodeling, petitioner discovered that the fire damage to the clubhouse was more extensive than originally disclosed to him by the seller. The costs of repairing this damage were estimated at $ 16,660.80. Petitioner sought an additional loan of $ 15,000.00 from the bank to cover these costs. The bank again had the property appraised. This time, the appraiser estimated its value at approximately $ 200,000.00. [2] The bank made the loan to *466 petitioner and the proceeds were used for the repair of the fire damage. After the 1984 discovery of the additional fire damage, petitioner obtained legal representation. In November 1984, petitioner agreed to release the seller of the property of all claims in return for the receipt of $ 3,500. On September 14, 1984, petitioner's contractor notified petitioner and the Nevada Contractor's Board that he was unable to complete his contract with petitioner and that his license should be suspended. The contractor filed for Chapter 7 bankruptcy relief in November 1984 and, in April of 1985, discharge was entered. At the time the contractor stopped work, the garage which had been planned had not been built, but the *467 main structure was complete and liveable except for minor matters. Petitioner resumed use of the clubhouse as his residence in November of 1984. Petitioner ceased making payments on the outstanding construction loan after October 1984. Ultimately, in March 1985, petitioner transferred the property to the bank in cancellation of petitioner's outstanding $ 195,000.00 loan. In addition to the $ 195,000.00 borrowed to finance the purchase and remodeling, petitioner had made an initial cash down payment of $ 20,000.00 and expended $ 21,831.63 of his own funds for remodeling. On Schedule C of his 1984 Federal income tax return, petitioner claimed a business loss of $ 63,581 with respect to the property. This loss consisted of $ 41,622 representing the excess of cost of goods sold over gross receipts reported from the disposition of the property plus claimed expenses for interest, bank service charges, escrow fees, and property taxes totalling $ 21,959. Petitioner also claimed deductions related to the property on his 1985 Federal income tax return totaling $ 2,304. In his notice of deficiency, respondent determined that petitioner was not entitled to the claimed real estate expense *468 deductions in 1984 and 1985. Respondent determined that petitioner realized $ 3,500 of unreported income in 1984 when he received that amount in settlement of his claim against the seller of the property. Respondent determined that petitioner was not entitled to a 1984 deduction for the $ 41,622 which petitioner claimed was the excess of costs over receipts upon disposition of the clubhouse property. Finally, respondent determined that petitioner was required to report capital gains of $ 55,000 in 1984 (i.e., the difference between the original purchase price of the subject property and the amount of the indebtedness discharged upon conveyance of the property to the bank). The notice of deficiency reflected these adjustments in the following manner: Adjustments to Income
Year:
1984 Year:
1985
SCHEDULE C REAL ESTATE EXPENSES
$ 21,959
$ 2,304
DAMAGE SETTLEMENT
3,500
COST OF GOODS SOLD
41,622 * * *
CAPITAL GAINS AND LOSSES
[3] 22,000
*469 In his notice of deficiency, respondent also determined additions to tax under sections 6653(a)(1) and (2) for 1984 and 1985 and 6661(a) for 1984. With respect to the sections 6653(a)(2) and 6661.(a) additions, respondent determined that the adjustments to which these additions apply were: 1.
SCHEDULE C REAL ESTATE EXPENSES
$ 21,959
2.
DAMAGE SETTLEMENT
3,500
3.
GAIN FROM SALE OF RESIDENCE
55,000
Respondent did not base the additions to tax under sections 6653(a)(2) or 6661(a) on the adjustment for "cost of goods sold" regarding the disposition of the clubhouse property. Prior to trial, the parties entered into the following stipulation. 26. The following deficiency adjustments assessed in Joint Exhibit 3-C, Statutory Notice of Deficiency, are hereby abated and settled: a. 1984 Adjustment 1A, disallowing $ 21,959.00 in Schedule C Real Estate Expenses is offset by allowing Petitioner $ 15,964.00 as an interest deduction and $ 1,084.00 as a real estate tax deduction on his 1984 Schedule A and $ 4,911.00 as additional basis in the subject property, to the extent the Court may find the subject property to be Petitioner's 1984 personal residence. b. 1984 Adjustment *470 1B, damage settlement of $ 3,500.00, was treated as a return of capital and reduction in Petitioner's basis in the subject property rather than income. c. 1984 Adjustment 1E, capital gains of $ 22,000.00 based upon 40% of the difference between $ 195,000 in cancellation of bank debt and the original purchase basis of $ 140,000, is eliminated in its entirety based upon Petitioner's actual loan basis of $ 195,000 in the subject property. d. 1984 Adjustment 16, penalties, if any, are to be recalculated based upon Subparagraphs a, b, and c immediately above. [4]
Two months after the trial of this case, respondent made a motion for leave to amend his answer. Respondent now, for the first time, seeks new additions to tax under sections 6653(a)(2) and 6661(a) based on the understatement of tax attributable to the disallowed "cost of goods sold." OPINION The first issue for decision is whether petitioner *471 may deduct the loss on disposition of his property under section 165(c)(2). Petitioner argues that the loss occurred in 1984 and that his 1985 conveyance of the property to the bank in lieu of foreclosure was only a ministerial act. In the alternative, he argues that he is entitled to deduct the loss in 1985. In light of our conclusion regarding the nature of the loss, we need not determine the year in which the loss occurred. Section 165(c)(2) provides that an individual may take a deduction for losses incurred in any transaction entered into for profit even if not connected with a taxpayer's trade or business. On brief, petitioner's sole argument was that he is entitled to a deduction under section 165(c)(2) for the loss on the disposition of the subject property since he held the property primarily for sale for profit. Respondent contends that the property was petitioner's personal residence and, as a result, petitioner may not deduct the loss. Respondent's determinations are presumed correct and petitioner bears the burden of proving otherwise. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). In order for the loss on disposition of the property *472 to be deductible, we must find that either (1) petitioner selected and purchased the subject property primarily for sale for profit rather than primarily for a personal residence; or (2) despite the fact that the initial acquisition was primarily for a residence, petitioner later appropriated the property to income-producing purposes. Austin v. Commissioner, 35 T.C. 221, 225-226 (1960), affd. 298 F.2d 583 (2d Cir. 1962). Determining petitioner's primary objective at the time of purchase is a factual inquiry. In making this determination, greater weight is given to objective facts than petitioner's statements as to his intent. Fox v. Commissioner, 82 T.C. 1001, 1022 (1984) (citing Siegel v. Commissioner, 78 T.C. 659, 699 (1982) and Engdahl v. Commissioner, 72 T.C. 659, 666 (1979)). At the time of purchase, petitioner had never before purchased real estate for either personal use or investment. Petitioner did not seek or obtain professional advice regarding the profit potential of the property. While petitioner eventually obtained an appraisal of what the property's estimated value *473 would be after remodeling, that appraisal was made 3 years after purchase and at the initiative of the lending bank. Petitioner resided in the clubhouse for over 3 years after purchase. During those years, he treated it as his personal residence for income tax purposes. On his income tax returns for 1980 through 1983, he deducted interest and taxes on the property as itemized deductions rather than business expenses. Petitioner did not live in the clubhouse during remodeling, but once work on the property stopped, petitioner moved back into the clubhouse. He continued to live there until he conveyed the property to the bank. Petitioner relies on his acquisition of remodeling plans in September 1983, his construction loan in November 1983, and the actual remodeling work in 1984, to demonstrate that he held the property primarily for profit. However, we find that all of these actions, taken over 3 years after becoming a resident, are consistent with the use of the property as petitioner's residence. We find that petitioner has failed to prove that his primary intent at the time of purchase was to hold the property for sale for profit. Despite the fact that a taxpayer acquires *474 property intending to use it primarily as his personal residence, he may deduct losses with respect to that property if it has subsequently been appropriated to income-producing purposes. Neave v. Commissioner, 17 T.C. 1237, 1243 (1952). This Court has set forth a nonexclusive list of five factors to be considered in determining whether an individual has converted his residence to property held for the production of income. These factors are: (1) The length of time the house was occupied by the individual as his residence before placing it on the market for sale; (2) whether the individual permanently abandoned all further personal use of the house; (3) the character of the property (recreational or otherwise); (4) offers to rent; and (5) offers to sell. Grant v. Commissioner, 84 T.C. 809, 825 (1985), affd. in an unpublished opinion 800 F.2d 260 (4th Cir. 1986); Newcombe v. Commissioner, 54 T.C. 1298, 1300-1301 (1970). After consideration of these factors, we are not persuaded that such a conversion took place. In fact, the only evidence suggesting that petitioner had a profit objective was his own testimony *475 that he believed that the property was a good investment. We accept the fact that petitioner hoped to realize a gain on any eventual sale of his residence. However, the mere hope or expectation of gain does not automatically result in a conversion of a personal residence into property held for the production of income. Jasionowski v. Commissioner, 66 T.C. 312, 323 (1976). There is also affirmative evidence that petitioner never intended to convert the property from residential use. When petitioner obtained construction financing in 1983, he was required by the bank to reveal his intended use of the property. Petitioner told the bank that his intention was to use the remodeled property as his personal residence. Petitioner has failed to prove that the subject property was purchased for, or subsequently appropriated to, income-producing purposes. As a result, the loss on disposition of the property is not deductible under section 165(c). [5]
*476 The next issue for decision is whether petitioner is entitled to deduct amounts paid for interest, real estate taxes, escrow fees, and other bank service charges relating to the subject property in the amounts of $ 21,959 [6] in 1984 and $ 2,304 in 1985 as either business expenses under section 162 or expenses incurred in the production of income under section 212. Section 162(a) provides for the deduction of ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. To be engaged in a trade or business, the taxpayer's primary purpose for engaging in the activity must be for income or profit. Commissioner v. Groetzinger, 480 U.S. 23, 35, 94 L. Ed. 2d 25, 107 S. Ct. 980 (1987). We have already found that petitioner's primary objective was not profit at the time of acquisition of the subject property or anytime thereafter. Therefore, petitioner was not engaged in a trade or business and is not entitled to deduct his expenses under section 162 in either 1984 or 1985. For the same reason, petitioner may not deduct his real estate expenses for 1984 or 1985 under section 212(2) as expenses incurred for the production of income. See Dean v. Commissioner, 83 T.C. 56, 73 (1984); *477 Jasionowski v. Commissioner, supra at 318-319. The next issue for decision is whether petitioner is liable for the 5-percent addition to tax for negligence under section 6653(a)(1) for 1984 and 1985. Section 6653(a)(1) provides that if any part of any underpayment of tax is due to negligence or intentional disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. For the purposes of this section, negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination of negligence is presumed correct, and petitioner *478 bears the burden of proving otherwise. Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Petitioner deducted a loss and expenses related to the clubhouse property that could only be deducted if he held that property primarily for profit. We have found that the property was held primarily for use as his personal residence. Petitioner has not presented any credible evidence as to why the negligence addition should not be imposed. Therefore, we hold that petitioner is liable for the addition to tax for negligence under section 6653(a)(1) for 1984 and 1985. The next issue concerns respondent's motion to amend his answer. Respondent asks this Court to allow him to amend his answer so that he may assert further additions to tax under sections 6653(a)(2) and 6661(a). Rule 41(a) allows for amendment of the pleadings "when justice so requires." In making this determination, we focus on whether petitioner would be prejudiced thereby. Waterman v. Commissioner, 91 T.C. 344, 349 (1988); see Estate of Horvath v. Commissioner, 59 T.C. 551, 555 (1973). *479 Respondent asserts that the proposed amendment does not prejudice petitioner as it merely corrects a mathematical error. Petitioner contends that respondent is not merely seeking a correction, but is attempting to assert completely new additions to tax. Respondent determined four adjustments to income for 1984 in his notice of deficiency. He specifically based the additions to tax under sections 6653(a)(2) and 6661(a) on three of these adjustments (the Schedule C real estate expenses adjustment, the damage settlement adjustment, and the adjustment for gain on sale of a residence). No additions were determined with respect to the adjustment for the claimed loss on disposition of the property (the "cost of goods sold" adjustment). Prior to trial, the parties stipulated that they had "abated and settled" the three adjustments upon which the sections 6653(a)(2) and 6661(a) additions to tax had been asserted. With respect to the additions to tax, the stipulation provides that the 1984 additions to tax, if any, are to be recalculated based upon this stipulation. Petitioner argues that at the time of trial, the only additions to tax at issue were related to the Schedule C real estate *480 expenses claimed in 1984. It is petitioner's position that neither respondent's statutory notice, the pleadings, nor the stipulation gives any notice that respondent was claiming additions to tax with respect to the $ 41,622 which petitioner claimed as a loss on the disposition of the property. We agree. In order to find that the effect of respondent's motion is merely a mathematical correction, we would have to find that the parties had agreed that the sections 6653(a)(2) and 6661(a) additions to tax would apply to any understatement resulting from the disallowance of "cost of goods sold" in the amount of $ 41,622. There is no basis for us to make such a finding. The stipulation language regarding recalculation of additions to tax is limited to the adjustments discussed therein which does not include the $ 41,622 adjustment. We find respondent is attempting to assert new additions to tax under sections 6653(a)(2) and 6661(a) with respect to the $ 41,622 adjustment. Respondent has failed to persuade us that justice requires that we allow him to amend his answer. In light of the stipulation of the parties, the additions to tax under sections 6653(a)(2) and 6661(a) which were *481 in issue at the time of trial were relatively insignificant. Petitioner presented little evidence on these issues. To allow respondent to raise a new issue under these circumstances would be unfair. Respondent's motion will therefore be denied. The next issue is whether petitioner is liable for the addition to tax under section 6653(a)(2) as determined in the notice of deficiency. Section 6653(a)(2) provides that if any part of an underpayment of tax is due to negligence or intentional disregard of rules and regulations, there shall be added to the tax, in addition to the 5 percent addition provided in section 6653(a)(1), an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of such underpayment which is attributable to negligence. We have already found that petitioner failed to prove that he was not negligent. In light of our denial of respondent's motion to amend his answer, only that portion of the underpayment of tax attributable to the adjustments which were designated in the notice of deficiency as being due to negligence is to be considered in computing the section 6653(a)(2) underpayment. The underpayment to which section *482 6653(a)(2) applies should also be computed in accordance with the previously mentioned stipulation. The final issue for decision is whether petitioner is liable for an addition to tax pursuant to section 6661(a) for substantial understatement of income tax for 1984. This addition to tax is equal to 25 percent of the amount of any underpayment of tax attributable to such understatement. Petitioner has not established that he falls within any of the statutory exceptions in section 6661(a); however, as previously mentioned, the notice of deficiency did not determine that this addition to tax applied to any of the understatement of tax related to the "cost of goods sold" adjustment. An understatement of income tax is considered substantial if it exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown for the taxable year. Sec. 6661(b)(1). In light of our disposition of respondent's motion to amend his answer and the aforementioned stipulation of the parties, it is not clear whether there is a substantial understatement. This will have to be determined in the Rule 155 computation. However, the understatement to which section 6661(a) might apply should not include *483 any understatement of tax resulting from the $ 41,622 "cost of goods sold" adjustment. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The evidence in the record is not clear as to whether this figure represents the value at the time of appraisal or upon completion of remodeling. However, it would be consistent with the previous transaction between petitioner and the bank, that the property be appraised at its value upon completion.↩
3. This adjustment for capital gains is 40 percent of the determined gain of $ 55,000. See sec. 1202.↩
4. Adjustment 16 in the notice of deficiency includes all of the additions to tax determined by respondent.↩
5. At trial, petitioner argued in the alternative that he would be entitled to deduct the loss as a casualty loss under sec. 165(c)(3)↩. Petitioner raised this argument for the first time at trial. Petitioner failed to amend his petition to include this issue and explicitly abandoned it on brief.
6. As previously indicated, the parties have agreed that if this amount is not allowed as a business expense or an expense incurred for the production of income, then $ 15,964 in interest and $ 1,084 in real estate taxes will be allowed as itemized deductions for 1984.↩